Argued July 2, affirmed July 31, 1962

# RENNER *v.* KINNEY ET AL

373 P. 2d 668

*David J. Krieger* and *Robert J. Miller,* Portland, argued the cause for appellant. On the briefs were Black, Kendall & Tremaine, Portland.

*Winfrid Karl Liepe,* Portland, argued the cause for respondents. With him on the brief were Howard K. Beebe and Maguire, Shields, Morrison, Bailey & Kester, Portland, and Willard C. Schwenn and Schwenn, Brink & Huffman, Hillsboro.

Before McAllister, Chief Justice, and Rossman, Warner, Perry, Sloan, O'Connell and Goodwin, Justices.

SLOAN, J.

Plaintiff was injured when he was working as a volunteer worker on the construction of a church. The church was being built by defendants, a partnership engaged in the building construction business, as a result of a contract between defendants and the church

organization. As more fully explained later, the contract permitted the use of volunteer labor. Plaintiff brought this action for the alleged damages caused by the injury. Defendants prevailed by a jury verdict and the judgment which followed. Plaintiff appeals. A statement of the facts will precede mention of the issues to be decided.

In the spring of 1959, Saint Matthew Lutheran Church of Beaverton entered into the contract with defendant builders for the construction of a church building. The contract provided that the cost of the building could be reduced by volunteer construction work by members of the church congregation. As a part of its building program, the church organization formed a building committee of five members. The members of the committee were chosen because of some knowledge of the building arts possessed by each member selected. Plaintiff, a man experienced in the steel construction industry, was chosen as a member of the committee. The full extent of the supervisory powers over other volunteer workers vested in the members of the committee and by the committee working as a unit was a subject of conflict in the evidence. The work of the committee in organizing and directing the volunteer help when used is the one function of the committee with which we are concerned.

This work of the committee was performed in this way: When the superintendent of the building project, who also happened to be one of the five members of the building committee, could foresee the use of volunteer labor to perform some task he would contact a member of the committee and so advise him. The committee would then organize a work party to go to the construction site. One or more of the members of the committee would be present to inform the

work party of the job to be done. The extent of the supervision or "bossing" exercised by the committee member in charge was one of the items in dispute. It was admitted that the committee member had some of the responsibility, at least, that a foreman or similar supervisory employee would possess. Prior to the day in question, the volunteers had dug footings, placed gravel on the basement floor and performed other tasks apparently requiring no great skill. The members worked on Tuesday and Thursday evenings and on Saturday. They did not work at any time during the regular working hours of defendants' crew of workers.

On July 31, 1959, the basement walls were completed and wooden joists installed to support the first floor. The next step in the construction was to place plywood subflooring on the joists and secure the same by proper nailing. Members of the building committee were notified that the job of nailing the plywood to the joists could be done by the volunteers. It was arranged that defendants' employees would place the plywood and tack it in place on Friday, July 31, 1959; that volunteers would come the next day and complete the nailing of the plywood. Plaintiff and another member of the building committee were designated to direct the work of the volunteers on the following day.

As a part of the placing of the plywood subfloor, defendants' employees left a hole at one part of the floor which was later to be used as a space for an air duct. There is some conflict in the evidence as to whether or not one of defendants' employees covered the hole with a piece of plywood before defendants' crew left the premises on Friday afternoon.

On Saturday, August 1, plaintiff and other members of the building committee arrived on the premises

prior to the expected arrival of the volunteer workers. They were met there by the defendants' superintendent so that the latter could instruct them in what was to be done. Two of the persons who arrived early noticed the piece of loose plywood covering the hole we have described. One of the men went to get hammer and nails in order to fasten the plywood securely. At this time, plaintiff was looking over the flooring to determine the joist lines for nailing. He noticed the piece of plywood and attempted to lift it. In doing so, he fell through the hole into the basement below and sustained serious injury.

Plaintiff's complaint alleged the following specifications of negligence on the part of defendants:

"1. In placing and leaving said piece of plywood so as to conceal said hole in the subflooring;

"2. In failing to give adequate or any warning of the existence of said hole in the subflooring;

"3. In failing to provide and maintain any proper barricade around said hole in the subflooring;

"4. In failing to secure said piece of plywood over said hole;

"5. In failing to make proper or any inspection of said premises."

■ Defendants' answer alleged two affirmative defenses. One, that plaintiff was a supervisor and in charge of the work of the volunteer workers and that he was, therefore, responsible for studying the plans and specifications and the construction in progress to discover and guard against any hazards that existed in respect to the work of the volunteers. It was then alleged that plaintiff volunteered and assumed any of the risks involved in such inspection and in his supervisory tasks, and was solely responsible for any

risk so assumed. The second defense was an allegation of contributory negligence.

The first seven assignments of error are all directed at the defense of assumption of risk, the most important one being a challenge to a rather long instruction given by the court in respect to facts the jury would be required to find in order to hold that plaintiff had assumed a duty of inspection and before it could find plaintiff had assumed any risk for any hazard the jury found existed. Plaintiff relies heavily on the recent case of *Ritter v. Beals et al*, 1961, 225 Or 504, 358 P2d 1080, and the authorities cited and extensively discussed in that opinion. In *Ritter* we withdrew as a separate defense the use of the term assumption of risk when it referred to voluntary exposure to an unreasonable hazard. We held that an allegation of contributory negligence covered the same subject matter and that it could not be alleged twice. The opinion in the case specifically excluded from its holding "the assumption of those risks inherent in the work at the time of the employment * * *." And that "if the workman has actual knowledge of such conditions, he may make an intelligent choice either to continue to work or to give up the position * * *." 225 Or at 518.

In the instant case the issues developed into factual ones to determine just what was the true relationship of the parties and persons involved; and what, factually, were the duties assumed by them? The instruction complained against first required the jury to find the facts in regard to these duties and then to place the responsibility where the jury found the facts demonstrated the duty resided. The court's instructions clearly told the jury that plaintiff could only

be held to the burdens alleged by defendant if it first found that the evidence established that plaintiff had assumed the alleged duties. In this case the instructions put it to the jury to find whether the facts, as contended for by defendant, brought the case within the situation best described by Harper and James as assumption of risk in the "primary sense":

> "The term assumption of risk in its primary sense refers to risks that are incidental to a relationship of free association between plaintiff and defendant, that is to say, one which either is at liberty to take or leave as he will * * *. In such a case defendant's duty toward plaintiff is limited. It does not extend to the use of care to make the conditions of the relationship reasonably safe—at most the duty is one of care to make these conditions as safe as they appear to be and it may fall short of that * * *. If these risks are fully comprehended, or perfectly obvious, or *of the kind which plaintiff and not defendant must look out for,* then plaintiff will be held to have assumed them by voluntarily entering into the relationship which entails them * * *." (Emphasis supplied.) Harper and James, The Law of Torts (1956 ed) 1163, § 21.1.

*Ritter v. Beals,* supra, 225 Or 504, 518 et seq., discussed and recognized the distinction between the kind of assumption of risk alleged by defendants in this case, and as identified by Harper and James above, and the nature of the assumption of risk as alleged in Ritter.

We think the court properly and fully instructed on the subject, and that the requested instructions not given, for which error is claimed here, were correctly refused. The court otherwise fully instructed on the duties of the parties as claimed for by plaintiff. The assignments are without merit.

■ The next assignment is aimed at an instruction on proximate cause. Within the particular facts of this case the instruction was proper. This instruction also required the jury to make a determination of facts before it could relieve defendant of a duty. The instruction was justified by the pleadings and the evidence.

■ Assignment of Error No. IX relates to the refusal of the trial court to give requested instructions as to the application of the Employers' Liability Act (ORS 654.305-654.990) and of the Basic Safety Code (under the Safety Act, ORS 654.005-654.180). "* * * It is elementary that, if one relies upon a statute for a defense, his pleading must contain a statement of the facts that will bring the case clearly within the terms of the statute * * *." *Nichols v. Union Pacific R. R. Co.,* 1952, 196 Or 488, 503, 250 P2d 379, and cases there cited. The same rule applies to alleged violations of the Safety Code. *Arnold v. Gardiner Hill Timber Co.,* 1953, 199 Or 517, 525, 263 P2d 403. Plaintiff argues that his allegations that defendants failed to maintain a barricade around the hole in the floor and that they failed to secure the piece of plywood over the hole were sufficient to bring the case within the terms of the Act and the Code. We think these are oblique allegations, not specific. Accordingly, the doubtful question as to the application of these two matters was not before the court at all. The court was justified in refusing to present them to the jury. The attempt to raise these issues on the allegations made gives the impression of a left-handed means of attempting to stay in court if all else fails. There was no error in refusing the instruction.

■ The last two assignments complain of the court's failure to admit offered exhibits. One was the

contract between the church and defendants. The court refused the exhibit, properly so, because it imposed obligations on defendants which were not within the issues of the case. The court ruled that the jury could have assumed that some of the obligations of defendants contained in the contract applied to plaintiff even though no allegation in the complaint was directed, or could have been directed, at any of the duties mentioned in the contract. For example, the contractual duty of defendant to erect certain barricades for the protection of the public. The other tendered exhibit was a trial memorandum prepared by one of defendants' attorneys and submitted to the court during or just before trial. The memorandum contained a statement that defendants' superintendent was present on the day in question as an "agent" of defendant. Evidence, taken by the court in chambers, in respect to the preparation of the exhibit clearly demonstrated that it was prepared by an assistant to one of the defense attorneys. The attorney who prepared the exhibit had little knowledge of the facts and no authority to bind anyone by such a conclusion. The document was prepared to inform the court of legal issues anticipated, not as a statement of fact. It would be extending the law of admissions against interest by an attorney or an agent a long way to hold this kind of document to be such. It would impair the use of these valuable aids to the expeditious trial of a case to hold that the attorney was automatically bound by any factual statement made. Plaintiff relies on *Dunning v. Northwestern Electric Co.*, 1949, 186 Or 379, 395, 199 P2d 648, 206 P2d 1177. The case presents a very different question: It was an interpretation of the statute in regard to admission of "particular facts, made in negotiations for compromise * * *."

§ 10-302, OCLA. The case does not support plaintiff. The assignment lacks merit.

Even if some error could be found in the assignments presented, a complete examination of the record would make it difficult to say they would be prejudicial. The issues presented by the pleadings and evidence were fully and carefully presented to the jury. The issues were factual and for jury determination. The trial was fair. The jury accepted defendants' theory of an unfortunate accident.

Judgment affirmed.