Argued February 3, affirmed March 24, 1971

THAYER, *Respondent, v.* OREGON FEDERA-
TION OF SQUARE DANCE CLUBS,
*Appellant.*
482 P2d 717

*Asa L. Lewelling*, Salem, argued the cause and filed the brief for appellant.

*Norman F. Webb*, Salem, argued the cause for respondent. With him on the brief were Crawford, Garrett & Webb, Salem.

TONGUE, J.

This is an action for personal injuries sustained in a fall on a plywood dance floor owned by defendant during its 1968 square dance festival when plaintiff tripped on an uneven joint between two sections of the plywood. Defendant appeals from a verdict and judgment for the plaintiff in the sum of $33,737.12, contending that the trial court erred: (1) in overruling its motion for a directed verdict; (2) in one of its instructions to the jury; and (3) in failing to withdraw three specifications of negligence.

Defendant's amended answer admitted that defendant was "engaged in operating" the square dance festival on a "temporary outdoor wooden floor" made of plywood sheets and that "some of said plywood sheets would depress slightly under the weight of a person or persons, making a differential of a fraction of an inch between that particular plywood sheet and the next adjacent sheet," but alleged that plaintiff "knew or should have known of its construction and characteristics," yet "voluntarily engaged" in dancing upon it, and that she was also negligent in failing to keep a lookout and in failing to "adequately raise her feet as she approached the joints in said floor * * *."

It appears from the evidence that the square dance festival is an annual event sponsored, conducted and operated by defendant, a non-profit corporation, and hosted each year by one of its member organizations. The 1968 festival was hosted by the Emerald Empire Council of square dance clubs in the Eugene area. For that purpose defendant entered into a lease of "facilities" at Sheldon High School in Eugene. The lease with the school district was executed on behalf of defendant by J. Morton Harkins, as "chairman" and also by one Leigh Rendall.

A plywood floor was used for the dance festival. The floor consisted of 4 x 8 sheets of one inch plywood held together on the "long sides" by tongue and groove and on the "short sides" by two metal plates, each with four screws. The floor was assembled in an area that was partly black topped and partly dirt. According to plaintiff's witnesses, the floor was "springy" when walked on and some of the plywood sheets would "depress" slightly, resulting in a "differential," or "deviation," of from one-eighth to three-quarters of an inch between the edges of the "short sides" of some of the sheets of plywood. There was testimony that there was such a "deviation" of one-half inch between the sheets of plywood at the point where plaintiff fell.

This plywood floor was designed and constructed under the direction of Mr. Morton Harkins, who had been elected by the Emerald Empire Council as general chairman of the festival. The idea for the floor, however, had been submitted to and approved by defendant. Defendant also raised funds to pay for the cost of the floor by the selling of "shares." For that purpose defendant, in its monthly publication, instructed members to send checks either to Mr. Harkins or to defendant's president.

Defendant was the owner of the floor, which was intended for future use by defendant on rental to member groups. One-half of the proceeds from the 1968 square dance festival was also paid to defendant. Mr. Richard Plane, defendant's president, helped plan the floor and worked "on all phases of its construction." He also inspected it the day before the dance festival by walking on it. He observed that "on some sections," if one "stepped on one board and not the other, you would get some 'give' and it would drop, oh, somewhere between an eighth and a quarter of an inch." Later, in the "President's Corner" of defendant's monthly publication (but without specific reference to these facts), Mr. Plane stated that:

"We realize that there were problems with the floor the first time it was used but those of us who worked on the construction knew of these problems and how to solve them, but we were just too pressed for time to make the necessary changes in time for the festival."

Plaintiff's testimony was that she had never seen or danced on the floor before and that she stubbed her toe on "something solid" and fell during the "grand march," the first dance. As a result, she suffered serious injuries.

■ Defendant's motion for directed verdict was based upon three contentions. The first was that defendant, as a corporation, could act only through its agents or employees; that Mr. Harkins was "solely responsible for the things that plaintiff complains about" and that he was not an employee or agent of defendant corporation. As we read the record, however, there was ample evidence from which the jury could find that both Mr. Harkins and defendant's president, Mr. Plane, acted as its agents in the construction of the floor and

in its inspection and, in any event, that defendant subsequently approved and ratified their conduct by the acceptance of benefits.

■ The second contention urged by defendant in support of its motion for a directed verdict is that defendant, as owner of the floor, was not liable to plaintiff, as an invitee, unless it knew or should have known that the floor was dangerous. Again, however, there was ample evidence from which the jury could properly find that defendant was responsible for the dance floor and its condition as the owner of the floor and operator of the festival, and because its president had inspected the floor and knew of its defects.

■ The final contention urged by defendant in support of its motion for directed verdict is that plaintiff's claim is barred, as a matter of law, by assumption of risk. The facts of this case are clearly, however, to be distinguished from the facts involved in *Vendrell v. School District No. 26C*, 233 Or 1, 18, 376 P2d 406 (1962), and *Franks v. Smith*, 251 Or 98, 444 P2d 954 (1968), as cited by defendant. Both of those cases involved voluntary participation in a sport in which there is a known danger of injury; i.e., high school football in *Vendrell* and motorcycle racing in *Franks*. And even if square dancing be considered to be a sport, while plaintiff may have assumed the risks inherent in square dancing, such as the possibility of being kicked by another dancer, she did not assume the risk of a faulty and dangerous floor.

Defendant next assigns as error the giving of an instruction that a corporation can act only through its officers, agents or employees, but that if one of defendant's officers, agents or employees was negligent such negligence was to be treated as the act of defendant if done within the scope of such person's authority.

For the same reasons as set forth above in discussing defendant's motion for directed verdict, it also follows that this was a proper instruction under the facts of this case.

Defendant's remaining assignments of error charge that the trial court erred in failing to withdraw three of plaintiff's specifications of negligence. We have examined these specifications in the light of the testimony offered on behalf of plaintiff and find that they were proper specifications and that there was ample evidence to support the submission to the jury of all three specifications.

Finding no error, the judgment in favor of the plaintiff in this case must be affirmed.