Argued May 20, affirmed June 28, 1976

BECKER, *Appellant,*
*v.*
BEAVERTON SCHOOL DISTRICT NO. 48,
*Respondent.*
(No. 35-011, CA 4786)
551 P2d 498

*Alex Christy,* Portland, argued the cause and filed the briefs for appellant.

*Larry A. Brisbee,* Hillsboro, argued the cause for respondent. With him on the brief were Schwenn, Bradley, Batchelor & Bailey, Hillsboro.

Before Schwab, Chief Judge, and Langtry and Thornton, Judges.

SCHWAB, C. J.

## SCHWAB, C. J.

Plaintiff is an elementary school student who was injured in a fall from a piece of playground equipment at one of defendant's schools. This particular apparatus was a climbing structure constructed of timbers supporting a wooden platform approximately six feet off the ground. There was a hole or opening in the center of the platform. Plaintiff played on this structure frequently and was aware of the playground rule forbidding students from jumping across this opening in the platform. On the day he was injured, he tried to jump across the opening while playing a game of tag. Plaintiff testified: "Somehow I tripped and fell through the hole."

Plaintiff brought this action for injuries resulting from the fall. The jury returned a verdict in favor of defendant.

■ Plaintiff assigns as error the trial court's denial of his motion to strike defendant's affirmative defense which stated that

"AS A FURTHER SEPARATE ANSWER AND DEFENSE the defendant alleges that all risks and hazards pertaining to the timber structure and particularly the risk and hazard of falling from the same was open and obvious. That the plaintiff knew of said risks and hazards when he climbed upon the timber structure and appreciated the risks and hazards of falling therefrom and that he therefore assumed the risks and hazards of falling from said structure."

Plaintiff contends that the defense of assumption of the risk was abolished by ORS 18.470 (1973).[1] He also contends that defendant's pleading alleged assumption of the risk in its secondary sense, i.e., contributory negligence, and that when contributory negligence is

---

[1] The trial of this case occurred on May 20, 1975, well before the effective date of the 1975 amendment to ORS 18.470. Oregon Laws 1975, ch 599, § 1, p 1412.

[ 881 ]

pleaded in terms of assumption of the risk the allegation should be stricken.[2]

ORS 18.470 (1973) provided:

> "Contributory negligence, including assumption of the risk, shall not bar recovery in an action by any person or his legal representative to recover damages for negligence resulting in death or injury to person or property if such negligence contributing to the injury was not as great as the negligence of the person against whom recovery is sought, but any damages allowed shall be diminished in the proportion to the amount of such negligence attributable to the person recovering."

Plaintiff's contention that this statute completely abolished the defense of assumption of the risk is erroneous. Nor, for the reasons which follow, do we agree that the defendant intended or the court construed the pleading in question as, in effect, a pleading of contributory negligence.

The Oregon Supreme Court has adopted the definition of assumption of the risk in its primary sense given by Harper and James:

> " 'The term * * * refers to risks that are incidental to a relationship of free association between plaintiff and defendant, that is to say, one which either is at liberty to take or leave as he will * * *. In such a case defendant's duty toward plaintiff is limited. It does not extend to the use of care to make the conditions of the relationship reasonably safe — at most the duty is one of care to make these conditions as safe as they appear to be and it may fall short of that * * *. If these risks are fully comprehended, or perfectly obvious, or *of the kind which plaintiff and not defendant must look out for,* then plaintiff will be held to have assumed them by voluntarily entering into the relationship which entails them * * *.'

---

[2] We note that in the cases cited by defendant for this conclusion, contributory negligence was pleaded as an affirmative defense in addition to the pleading of assumption of the risk. *Edwards v. Criteser,* 269 Or 587, 525 P2d 1025 (1974); *Zumwalt v. Lindland,* 239 Or 26, 396 P2d 205 (1964). The cases are grounded on the principle that a defendant should not be allowed to plead the same defense twice. They do not hinge on a defendant's imprecision in drafting. *See, Ritter v. Beals et al,* 225 Or 504, 517, 358 P2d 1080 (1961).

(Emphasis supplied.) Harper and James, The Law of Torts (1956 ed) 1163, § 21.1." *Renner v. Kinney et al,* 231 Or 553, 559, 373 P2d 668 (1962).

Harper and James also state that assumption of the risk in its primary sense is "only the counterpart of the defendant's lack of duty to protect the plaintiff from that risk." 2 F. Harper & F. James, The Law of Torts 1162, § 21.1 (1956). In its secondary sense, assumption of the risk is " 'a mere phase of contributory negligence.' " *Ritter v. Beals et al,* 225 Or 504, 521, 358 P2d 1080 (1961) (quoting from *Meistrich v. Casino Arena Attractions, Inc.,* 31 NJ 44, 54, 155 A2d 90 (1959)); *accord,* 2 F. Harper & F. James at 1164. In defendant s affirmative defense, the only risks which he alleged that plaintiff assumed were "the risks and hazards of falling from [the timber] structure." Defendant pleaded that that risk was fully comprehended and perfectly obvious. In other words, defendant pleaded assumption of the risk in its primary sense and not contributory negligence. The trial court was correct in not striking the defense because it was a valid defense[3] whether or not the comparative-damages formula in ORS 18.470 (1973) applied to it, and because it was properly pleaded.

---

[3] It has been argued that *Ritter v. Beals et al, supra,* rendered assumption of the risk in its primary sense conceptually insignificant in Oregon since it is only the counterpart of a defendant's lack of duty to protect a plaintiff from a risk. Comment, *Comparative Negligence in Oregon: A New Era in Tort Law,* 8 Will L J 37 (1972); *see generally,* 2 F. Harper & F. James, The Law of Torts 1162-63, § 21.1 (1956); Renner v. Kinney et al, 231 Or 553, 373 P2d 668 (1962). Oregon cases following *Ritter,* however, made it clear that assumption of the risk in its primary sense remained as a viable defense in Oregon. McDonald v. Hanneson, 263 Or 612, 503 P2d 674 (1972); Whipple v. Salvation Army, 261 Or 453, 495 P2d 739 (1972); Thayer v. Ore. Fed. of Square Dance Clubs, 258 Or 302, 482 P2d 717 (1971); Franks v. Smith, 251 Or 98, 444 P2d 954 (1968); Vendrell v. Sch. Dist. 26C, Malheur Co., 233 Or 1, 376 P2d 406 (1962). There is disagreement, however, as to whether these later cases are consistent with the Harper and James analysis espoused in *Ritter* or whether the cases reflect a return to the Restatement of Torts (Second) theory that there is a distinction between "duty," which refers to what the defendant should reasonably expect, and "assumption of the risk," which refers to what the plaintiff in fact knows and is willing to accept. *Compare* Comment, *Torts—Assumption of Risk—*

Next, plaintiff assigns as error the trial court's failure to give his requested instructions regarding comparative negligence. After the court read its instructions to the jury, including instructions on assumption of the risk but not on comparative negligence, plaintiff's counsel made no exceptions. As a result, defendant contends that we should not consider this assignment.

■ In *Crow v. Junior Bootshops,* 241 Or 135, 404 P2d 789 (1965), the Oregon Supreme Court held that the defendant had preserved his claim of error for consideration on appeal by requesting a specific instruction even though no exception was taken when the court did not give that instruction. This was temporized by the holding of *Holland v. Srs. of Saint Joseph, Seeley,* 270 Or 129, 141, 522 P2d 208, 526 P2d 577 (1974), to the effect that there must be something in the requested instruction which "clearly and directly" calls the trial court's attention to its error. This was the case here, and will be the case whenever an instruction is requested on a topic on which the court ultimately gives no instruction at all. Therefore, we consider plaintiff's assignment of error on its merits.

---

*Substantive and Procedural Problems in Oregon,* 46 Or L Rev 219 (1967), with Comment, *Comparative Negligence Legislation: Continuing Controversy Over the Doctrine of Assumption of the Risk in Oregon,* 53 Or L Rev 79 (1973). The 1975 legislature apparently made this issue academic by abolishing implied assumption of the risk. ORS 18.475(2) (Oregon Laws 1975, ch 599, § 4, p 1413). Presumably, assumption of the risk remains as a defense insofar as it connotes express consent, but this will add little. In its simplest sense, according to Prosser, assumption of the risk means that

"* * * plaintiff, in advance, has given his consent to relieve the defendant of an obligation of conduct toward him, and to take his chances of injury from a known risk arising from what the defendant is to do or leave undone. The situation is then the same as where the plaintiff consents to the infliction of what would otherwise be an intentional tort, except that the consent is to run the risk of unintended injury, to take a chance, rather than a matter of the greater certainty of intended harm. The result is that the defendant is relieved of all legal duty to the plaintiff; and being under no duty, he cannot be charged with negligence." Prosser, The Law of Torts 440, § 68 (4th ed 1971).

*See generally,* 2 F. Harper & F. James, supra at 1184, § 2.16.

■ We hold that the former comparative-negligence statute, which Prosser says should be called a "damage-apportionment" or "comparative-damages" statute,[4] applied only to assumption of the risk in its secondary sense. The wording of the statute suggests this. As noted above, the statute provided:

> "Contributory negligence, including assumption of the risk, shall not bar recovery in an action * * * if *such* negligence contributing to the injury was not as great as the negligence of the person against whom recovery is sought * * *." ORS 18.470 (1973). (Emphasis supplied.)

■ The choice of the term "such negligence" in the second clause of the statute required the term "contributory negligence" or its equivalent as an antecedent. Therefore, we conclude that the phrase "including assumption of the risk" was merely used as a synonym for "contributory negligence," the words immediately preceding the phrase. *See, V. Schwartz,* Comparative Negligence 160, § 9.2 (1974). Since the statute did not apply to assumption of the risk in its primary sense and since defendant pleaded assumption of the risk in that sense, it would not have been proper for the trial court to give plaintiff's requested instructions on comparative negligence. Under ORS 18.470 (1973), assumption of the risk in its primary sense remained a complete bar to a negligence action.

■ Plaintiff also assigns two evidentiary matters as error. On direct examination plaintiff elicited testimony from the person who was principal of the school prior to plaintiff's accident that a pupil named Easterly had reported that he had been injured on the same climbing structure. Presumably, this was intended to prove that defendant had knowledge or notice of the dangerous condition of the apparatus. On cross-examination of that principal and on cross-examination of the person who was principal at the time plaintiff was injured, defense counsel asked several questions about Easterly. One principal testified

---

[4] W. Prosser, *Comparative Negligence,* 51 Mich L Rev 465, n 2 (1953).

that Easterly had some adjustment problems and would sometimes feign being hurt to get attention, that he was a "cry wolf"-type. The other testified that Easterly was very dramatic about feigning illness. Plaintiff's objections to the relevancy of the questions eliciting these responses were overruled. Plaintiff contends that because this was evidence of Easterly's character, it should not have been allowed.

Wigmore lists several different modes in which knowledge of the dangerous qualities of a thing might be obtained by its owner. He also states that there are two considerations which should be examined in relation to the particular mode in which a person obtained his knowledge: "* * * *(a)* The probability that the person received an impression of *any fact at all; and (b)* The probability that from the particular occurrence he would gain an impression as to the *specific fact* in question * * *." II Wigmore, Evidence 43, § 245 (3d ed 1940) (emphasis in original).

Wigmore illustrates his analysis of evidence used to prove knowledge with an example that is analogous to the case at hand. He states:

> "* * * [A] former accident to apparatus owned by A may indicate that A learned of the defect in the apparatus, either because he probably observed the former accident or because he probably was told of it by his subordinate having charge of the apparatus, or because complaint was probably made to him; and not only is the probability *(a)* of his having learned of the former accident thus involved, but also the probability *(b)* that the former accident would have revealed to him specifically the existence of the defect * * *." II Wigmore, supra, at 43-44.

At another point, Wigmore explains:

> "* * * The element *(a)* * * * requires that the prior injury or defect should be such as would probably lead to a general publication of it or to a report being carried to the person charged (or his agent); and the element *(b)* * * * requires that the prior injury or defect should be one which if known would naturally warn the person

charged of the existence of the defect in question * * *."
II Wigmore, Evidence 70-71, § 252 (3d ed 1940).

Here we are dealing with testimony concerning a complaint about a former accident on the climbing apparatus owned by defendant. Although Wigmore's element *(a)* was apparently not in issue, the testimony to which plaintiff objected is directly relevant to element *(b)*, i.e., whether the complaint by Easterly was of the quality that would give defendant knowledge of any unreasonably dangerous condition of the climbing structure. At the time of plaintiff's objection, the trial court made it clear to the jury that the evidence was being admitted solely for the purpose of deciding the notice issue. For this limited purpose, we hold that the evidence was relevant and admissible.

We regard plaintiff's last assignment of error as hypertechnical if not frivolous. He contends that the court erred in not admitting Plaintiff's Exhibit Number 15, his hospital records, into evidence. Although the trial judge did not formally receive the exhibit, there is no doubt that the jury had the hospital records in its possession during its deliberations. The tag on the package of hospital records identifying the exhibit is marked "received." More importantly, the "Clerk's Certificate" attached to the envelope in which all of the exhibits were transmitted to this court indicates that Plaintiff's Exhibit Number 15 was offered and received in this case. According to the Clerk's Certificate, the only exhibits which were offered but not received were four of defendant's exhibits.[5]

Affirmed.

---

[5] Rule 5.15 of this court provides:

"So far as practicable exhibits shall be transmitted to the appellate court in a single envelope. The trial court clerk shall note thereon, or if no envelope is used, then on a separate list, the number and description of all exhibits with notations indicating those not received in evidence and those withdrawn by the parties." Supreme Court and Court of Appeals of the State of Oregon, Rules of Procedure (1974).