Shirley RODGERS, Plaintiff
and Appellant,

v.

Annie N. HANSEN, and Albert J. Hansen, Defendants and Respondents.

No. 15334.

Supreme Court of Utah.

May 23, 1978.

Gordon L. Roberts and Steven K. Schroeder of Parsons, Behle & Latimer, Salt Lake City, for plaintiff and appellant.

Steven H. Gunn of Ray, Quinney & Nebeker, Salt Lake City, for defendants and respondents.

HALL, Justice:

Plaintiff appeals from an adverse decision relating to plaintiff's quiet title action. The trial court granted defendants' counterclaim which effectively quieted title in them as to their claimed two-thirds interest in the subject property. Plaintiff seeks reversal, a new trial, or a decision that plaintiff is entitled to a one-half interest in the property.

On April 25, 1942, Harold and Myrtle Neil agreed to purchase the subject property located in Salt Lake County. A Uniform Real Estate Contract was entered into, and the price was set at $3,250.00. A down payment of $400.00 was made by defendants, Mr. and Mrs. Hansen, on behalf of the Neils. (Mrs. Hansen is a daughter of the Neils, as is plaintiff, Mrs. Rodgers.) Short-

ly after the contract was entered into, Mr. Neil died. At Mrs. Neil's request defendants made several payments of $25.00 per month as required under the contract. These payments totaled $325.00. Subsequently, Mrs. Neil asked defendants to pay off the balance due under the contract. On July 25, 1944, the balance of $2,389.00 was paid by defendants and the sellers of the property executed a warranty deed to "Myrtle C. Neil and Annie N. Hansen and Albert J. Hansen, her husband, as joint tenants and not as tenants in common." It is undisputed that defendants agreed that Mrs. Neil would be allowed to remain in possession of the property during her lifetime, that she would retain any income generated therefrom, and that she would pay all taxes and expenses of upkeep.

■ Beginning on October 20, 1944, and extending up until August 5, 1949, defendant Mrs. Hansen executed a series of 43 receipts reflecting payments by Mrs. Neil to defendants in the total sum of $1,159.00. Most of the receipts were in the amount of $25.00, although they range in value from $7.50 to $70.00. The first receipt shows a "previous balance" of $2,389.00, and includes the notation "payment on house at 412 North 2nd West." The final receipt, dated August 5, 1949, shows a balance due of $1,055.00. Defendants concede that some payments were received, but say that the receipts were given to qualify Mrs. Neil for welfare. Generally, one is not permitted in a court of justice to take advantage of, or claim protection by reason of his own fraud.[1] At the very least, this assertion by Mrs. Hansen reflects poorly on her credibility as a witness.

In 1958 a family squabble over the ownership of the property began. Mrs. Neil contacted an attorney, Emmett Brown, when she became upset by a proposed sale of the property by the Hansens. Mr. Brown wrote the Hansens a letter expressing concern and Mrs. Hansen responded by acknowledging receipt of payments but insisting that she and her husband owned two-thirds interest in the property.

In 1964, on the advice of a second attorney, Dwight King, Mrs. Neil executed a quitclaim deed in favor of plaintiff, who in turn reconveyed the property back to Mrs. Neil. The apparent purpose of these conveyances was to sever the joint tenancy between Mrs. Neil and the Hansens so that when she died her interest (whatever it might be) would be divided among all six of her children.

In 1968, the parties of this suit, Mrs. Neil, and other family members met at defendants' home. At the meeting Mrs. Neil apparently stated that she believed she owed only about $250.00 on the "loan," as she had not always received receipts on her payments. Defendants denied that they had agreed to sell their interest and reaffirmed their claim to a two-thirds interest in the property. Nothing was resolved at that meeting.

In 1971, Mrs. Neil again conveyed her interest in the property to plaintiff by quitclaim deed. Plaintiff was instructed to hold this interest until after her death and then distribute it to Mrs. Neil's six children in equal shares.

Mrs. Neil died on August 24, 1975. This quiet title action was commenced on September 21, 1975.

The trial court dismissed plaintiff's complaint and granted judgment for defendants on their counterclaim, quieting title in them as to a two-thirds interest in the property. The court also impressed a trust upon the one-third interest owned by plaintiff, to be distributed to all of Mrs. Neil's children in equal shares.

■ Generally, evidence produced at trial is to be reviewed in the light most favorable to sustain the findings and judgment of the trier of fact.[2] It is also a rule of this jurisdiction that to declare a deed a mortgage, the evidence must be clear and

---

1. 37 Am.Jur.2d, Fraud and Deceit, Sec. 301.

2. *Cutler v. Bowen*, Utah, 543 P.2d 1349 (1975).

convincing.[3] We are convinced that the 43 receipts given by Mrs. Hansen to Mrs. Neil sufficiently meets those evidentiary requirements and compels us to reverse the findings of the trial court.

The concept is essentially as explained as follows:

> [G]enerally, whenever a transaction resolves itself into a security, or an offer or attempt to pledge land as security for a debt or liability, equity will treat it as a mortgage, without regard to the form it may assume, or the name the parties may choose to give it. . . .[4]

> If a person who has contracted for the purchase of land procures another to lend him all or part of the money necessary to make the payments, or to advance it for him, and has the deed made to the latter, with an agreement that he will convey the title to the former on repayment of the amount advanced, the transaction will amount to an equitable mortgage if it was the understanding and intention of the parties that the one should become debtor to the other for the money advanced, and that the land should be held merely as security for this debt.[5]

 We have long recognized the concept of equitable mortgage[6] and after reviewing the record we are convinced that it was the intent of the parties here to create such a relationship.

 The trial court concluded that the receipts were insufficient memoranda to take the alleged agreement out of the statute of frauds.[7] With this we cannot agree. When taken together, the receipts do constitute a sufficient writing. They are denoted as "house payments," show the "balance due" and are signed by Mrs. Hansen, the party to be bound.

Nor is plaintiff's claim defeated by either a limitation statute or laches. Although it was known that there was a dispute as to respective interests in the property as early as 1958, Mrs. Neil had continuous possession of the property. The burden on Mrs. Neil to initiate legal action can be no greater than the burden on the Hansens to establish their claim to the property. The action was timely filed by Mrs. Neil's successor in interest when possession was lost at the death of Mrs. Neil.

 We must therefore reverse the trial court's decision relating to ownership of the property. We conclude that Mrs. and Mrs. Hansen have an equitable mortgage on the property in the amount of $1,055 (the "balance due" shown on the final receipt issued). Subject to this equitable mortgage held by the Hansens, title to the property is in Mrs. Rodgers, to be held in trust for the benefit of Mrs. Neil's six children.

Reversed. No costs awarded.

ELLETT, C. J., and CROCKETT, MAUGHAN and WILKINS, JJ., concur.

---

3. *Northcrest, Inc. v. Walker Bank & Trust Co.,* 122 Utah 268, 248 P.2d 692 (1952).

4. 59 C.J.S. Mortgages, Sec. 13.

5. Ibid., Sec. 14(e).

6. See e.g. *Bybee v. Stuart,* 112 Utah 462, 189 P.2d 118 (1948).

7. U.C.A., 1953, 25–5–1.