Paul T. MOORE, Plaintiff and Respondent,

v.

BURTON LUMBER & HARDWARE COMPANY, a corporation, Defendant and Appellant.

No. 16672.

Supreme Court of Utah.

May 22, 1981.

Raymond M. Berry, Brucett Jensen, Salt Lake City, for defendant and appellant.

W. Eugene Hansen, Ralph L. Dewsnup, Salt Lake City, for plaintiff and respondent.

STEWART, Justice:

Defendant appeals from a judgment based on a jury's special verdict which found defendant liable for personal injuries sustained by plaintiff while operating a radial arm saw on defendant's business premises.

During approximately a two-year period, from June 1973 to May 1975, plaintiff supervised a large building project for Deal Development Company ("Deal") in Salt Lake City. Deal had an open account with defendant which was used in charging hardware items purchased for the project.[1]

Shortly before noon on May 1, 1975, plaintiff and one Buddy Prince, a fellow

---

1. Deal's lumber was purchased out of state and stored at Intermountain Lumber ("Intermountain"), several blocks away from defendant's business premises.

employee of Deal, drove to defendant's business premises in plaintiff's pickup truck. Their purpose was to buy some hardware items and to ask permission to use defendant's radial arm saw to cut several two-by-fours into blocks to be used in enclosing air-conditioning ducts. While Prince gathered the hardware items, plaintiff went to the front desk to seek permission to use the radial arm saw. There is substantial conflict in the evidence as to what thereafter transpired.[2]

Plaintiff apparently spoke with defendant's office manager who quoted plaintiff a price per cut for the use of the saw, but no set price was agreed upon. Plaintiff testified that thereafter someone told him to check with the yardmen and that if the saw was not being used, it would be all right for him to use it.

Plaintiff went out into the yard and told a yardman by the name of Jessie that he had been given permission to use the saw. Jessie led plaintiff to the saw shed, where plaintiff offered to give Jessie a six-pack of beer if he would change the blade before plaintiff got back from Intermountain Lumber with the lumber to be cut. Jessie allegedly agreed, and plaintiff and Prince then drove to Intermountain where they picked up the two-by-fours they planned to cut into blocks. Plaintiff claims they stopped at a small store where they bought the beer promised to Jessie. They then returned to defendant's business premises and entered through the back gate.

Plaintiff entered the saw shed and noticed that the saw had been reset from the ripping position to the cross-cut position. He then measured the length he wanted to cut and drove a nail into the table for use as a gauge so that he would not have to measure each cut separately. Plaintiff started the saw and cut the first two-by-four by placing its end against the nail gauge, pulling the saw toward him and returning it, then knocking the cut block out of the way, and moving his two-by-four up to the nail gauge to repeat the process. This procedure was following approximately seven to nine times.

When he finished cutting the first two-by-four, plaintiff pushed the saw back to its return position and went to the end of the table to get the second two-by-four. He took hold of the second two-by-four with both hands and moved it along the table in front of a one-by-four which served as a guide. Plaintiff momentarily directed his attention to the nail gauge on the table to make sure the two-by-four abutted it, when suddenly the saw cut his hand. Before he could pull his hand away from the saw, his thumb and his index and middle fingers of his right hand were severed, and his remaining two fingers were severely cut. There is no evidence that the blade of the saw cut through the board and then into plaintiff's fingers, or that plaintiff either manually pulled the saw into a cutting position, or that he moved his hand into the saw, as is speculated by the dissent. Nor is there evidence that the manner in which plaintiff placed his hand on the board was improper.

The testimony at trial included evidence that the radial arm saw had been in use on defendant's premises for over thirty years without an accident. There was a sign hanging on the wall opposite the saw which read in large yellow letters, "For Use of Authorized Operator Only." Plaintiff testified to having had experience operating such saws, and, although he admitted that such saws are, by their very nature, extremely dangerous, he claimed he was competent to operate the saw without any instruction or assistance.

The evidence indicated that the saw was equipped with a hood guard which serves to control direction of the sawdust produced by cutting wood; it is not designed to be a safety guard but could be rotated down against most thicknesses of lumber. Plain-

2. Defendant and its employees dispute plaintiff's claim that he received permission to use the saw. For the purposes of this appeal, we view the facts in the light most favorable to the verdict. *Berkeley Bank for Cooperatives v. Meibos*, Utah, 607 P.2d 798 (1980); *Rodgers v. Hansen*, Utah, 580 P.2d 233 (1978).

tiff's expert testified that the hood guard was not an adequate blade guard, that is, a guard designed to prevent the operator of the saw from coming into contact with the saw blade. International standards for blade guards require that such guards permit no more than ⅜ inch clearance between the bottom of the guard and the saw table when the blade is exposed. Even if the hood guard were rotated down, once the lumber was cut the clearance between the bottom of the guard and the table would exceed ⅜ inch. Thus, even had plaintiff rotated the hood guard down so that it would contact the two-by-four being cut, the guard would not have prevented plaintiff's hand from being drawn into the blade of the saw.

In addition, plaintiff's expert testified that the saw in question was not equipped with a system to prevent the spinning blade from creeping forward from its rest position. A large spinning blade will creep forward unless it is restrained, either mechanically or by gravity. In a mechanical restraint system a spring or a pulley and weight system holds the blade in the maximum rearward position. The same result can be obtained by simply tilting the front of the table slightly so that gravity keeps the blade in the proper rest position. In the opinion of plaintiff's expert, the lack of proper blade guards and a blade restraining system rendered the saw in question "defective and unreasonably dangerous."

A special verdict was returned finding both plaintiff and defendant negligent, but, significantly, the jury also found plaintiff's negligence not to have been a cause of the injury. The jury also found that plaintiff was a business invitee and not a licensee or trespasser and assessed damages in the amount of $144,892. The court entered judgment in that amount against defendant. Defendant's motion for a new trial was denied, and this appeal followed.

◾ Defendant's first claim on appeal is that the trial court prejudicially erred in refusing to instruct the jury that there is no duty to warn a business invitee of an obvious danger. Specifically, defendant argues that because one instruction informed the jury that there was no duty to warn licensees of obvious dangers, the failure to give such an instruction with respect to invitees may have led the jury to believe erroneously that defendant should have warned plaintiff as to obvious dangers. Defendant also claims that the trial court erred in failing to instruct on the defense of assumption of risk and in refusing to submit that defense to the jury for a finding in the special verdict.

There are of course certain risks which anyone of adult age must be taken to appreciate. *Wold v. Ogden City*, 123 Utah 270, 258 P.2d 453 (1953); Prosser, *Handbook of the Law of Torts* (4th ed.) § 61 p. 394, see also § 68 p. 448. It has long been held that a property owner has no obligation to warn an invitee of dangers which are known to the invitee or which are so obvious and apparent that he may reasonably be expected to discover them. Defendant specifically contends that the evidence supported its theory that the dangers were obvious and that the defendant therefore had no duty to warn plaintiff of such dangers.

Under the circumstances of this case, the trial court should have instructed that there was no duty to warn an invitee of an obvious danger so as to have avoided any possible misunderstanding. *Steele v. Denver & Rio Grande Western Railroad Company*, 16 Utah 2d 127, 396 P.2d 751 (1964); see also *Ellertson v. Dansie*, Utah, 576 P.2d 867 (1978). Nevertheless, the failure to do so was harmless.

There was no evidence that the specific dangers for which the defendant could be held responsible and which could have caused the injury—the lack of certain blade guards and the creeping of the saw—were such obvious and common hazards as to be apparent to a layman or one with plaintiff's background. The evidence which did relate to the obviousness of the danger of the saw went to its inherent danger rather than the specific dangers created by the lack of blade guards and the tendency of the saw to creep forward. As to these defects, there was expert testimony that the saw

was defective and unreasonably dangerous. But there was no testimony that the creeping was obvious to one in plaintiff's shoes or that the plaintiff knew or should have known about the availability of the blade guards.

■ In answer to a special interrogatory, the jurors specifically found that plaintiff was negligent, but that his negligence was not a proximate cause of the injury. On the other hand, the jury specifically found that defendant was negligent and that its negligence was a proximate cause of the injury. To accept defendant's theory that the injury resulted from the failure to warn or correct an obvious danger would result in a finding that *plaintiff's* negligence was a proximate cause of the injury—in direct conflict with the jury's finding on proximate cause. The jury's responses to the special interrogatories are consistent only on the proposition that the injury resulted from a nonobvious danger. Therefore, because a jury's answers to special interrogatories must, if at all possible, be read harmoniously, *Weber Basin Water Conservancy Dist. v. Nelson*, 11 Utah 2d 253, 358 P.2d 81 (1960); *Van Cleve v. Betts*, 16 Wash. App. 748, 559 P.2d 1006 (1977), and in light of the presumption that the jury followed the instructions, we must reject defendant's theory. Clearly, under the instructions, the jury could have found plaintiff's negligence a proximate cause but chose not to do so.

In sum, although Instruction 22 did not state that defendant had a duty to warn of obvious dangers,[3] the error was harmless because there was no "reasonable likelihood ... that ... there would have been a result more favorable" to defendant had the instruction been as requested. *Rowley v. Graven Bros. & Co.*, 26 Utah 2d 448, 451, 491 P.2d 1209, 1211 (1971). See also *Lee v.*

*Mitchell Funeral Home Ambulance Serv.*, Utah, 606 P.2d 259 (1980).

The next issue arises out of the trial court's refusal to instruct the jury on assumption of risk. Both plaintiff and defendant submitted proposed instructions on the issue. The judge's rationale for his ruling was as follows:

I think it is a negligence case, is what it is, a comparative negligence case. I think the instructions ought to be limited to that, excluding assumption of the risk which, under comparative negligence, is part of comparative [contributory] negligence.

Undoubtedly, in so ruling the court had in mind § 78–27–37 U.C.A. (1953), which provides:

Contributory negligence shall not bar recovery in an action by any person or his legal representative to recover damages for negligence or gross negligence resulting in death or in injury to person or property, if such negligence was not as great as the negligence or gross negligence of the person against whom recovery is sought, but any damages allowed shall be diminished in the proportion to the amount of negligence attributable to the person recovering. As used in this act, "contributory negligence" includes "assumption of the risk."

With time it has become clear that the assumption of risk defense in fact included at least three different legal concepts. See *Jacobsen Construction Co. v. Structo-Lite Engineering, Inc.*, Utah, 619 P.2d 306 (1980), and authorities there cited. One form of assumption of risk has been referred to by some as primary assumption of risk, which may be either expressed or implied. The "primary express" form involves an agreement by the plaintiff to accept the

---

**3.** Instruction No. 22, which was given by the court, stated:

If you find by a preponderance of the evidence that, at the time of his injury, Mr. Moore was defendant's "business invitee," as that term is defined hereinafter, then defendant's duty to Mr. Moore was to refrain from any acts of negligence toward him; to exercise reasonable care to keep the premises,

including the radial arm saw thereon, in a condition reasonably safe for purposes consistent with his presence there; and to warn him of any and all dangers involving the operation of said saw which were known to the defendant or should have become known to the defendant in the exercise of reasonable diligence and the performance of reasonable inspections.

risk or danger, and the "primary implied" form involves a relationship in which defendant simply owes no duty of care to the plaintiff. Secondary assumption of risk is, as stated, the unreasonable encountering of a known and appreciated risk and in reality an aspect of contributory negligence. *Rigtrup v. Strawberry Water User's Ass'n,* Utah, 563 P.2d 1247 (1977); *Jacobsen Construction Co. v. Structo-Lite Engineering, Inc., supra.*

■ Both assumption of risk and contributory negligence are founded on unreasonable conduct. Each concept focuses on a different aspect of unreasonableness in the face of a risk of harm. A plaintiff's failure to foresee a danger which a reasonable person acting in a prudent manner would have foreseen is designated negligent conduct. Assumption of risk designates conduct of a person who unreasonably takes a known and appreciated risk.

■ Assumption of risk, as that term is used in § 78–27–37, is a voluntary and unreasonable exposure to a known danger. *Jacobsen Construction Company v. Structo-Lite Engineering, Inc., supra.* The complete bar to recovery in an action for negligence, which assumption of risk has been historically, has been lifted by the Utah comparative negligence statute to avoid the harshness visited upon plaintiffs as a result of the all-or-nothing nature of the former rule of law.[4] Secondary assumption of risk is treated in the same manner as contributory negligence for the purpose of apportioning fault under the comparative negligence statute. *Rigtrup v. Strawberry Water User's Ass'n,* Utah, 563 P.2d 1247 (1977). The relationship between the two concepts was explained in *Jacobsen Construction Company v. Structo-Lite Engineering, Inc., supra* at 312:

> ... the reasonableness of plaintiff's conduct in confronting a known or unknown risk created by defendant's negligence will basically be determined under principles of contributory negligence. Atten-

tion should be focused on whether a reasonably prudent man in the exercise of due care would have incurred the risk, despite his knowledge of it, and if so, whether he would have conducted himself in the manner in which the plaintiff acted in light of all the surrounding circumstances, including the appreciated risk. See *Leavitt v. Gillaspie,* Alaska, 443 P.2d 61 (1968). Then, if plaintiff's unreasonableness is viewed to be less than that of defendant, according to the terms of the statute, "any damages allowed shall be diminished in proportion to the amount of negligence attributable to the person recovering." [Footnote omitted.]

In light of the difficulties arising from the several meetings of the term assumption of risk, some authorities have advocated the complete abolition of the term "assumption of risk" and the utilization of other legal terminology to describe the conduct. See 2 Harper and James, *Law of Torts* § 21.8 at 1191–92 (1956); Flemming, *Law of Torts,* 241–58 (2nd ed. 1961). We agree.

Defendant maintains that *Rigtrup v. Strawberry Water Users Ass'n,* Utah, 563 P.2d 1247 (1977), held that assumption of risk is still a complete bar to recovery. Insofar as that part of assumption of risk which is an aspect of contributory negligence is concerned, that case did not so hold. *Rigtrup* recognized that "where there is a known danger, the risk of which is voluntarily assumed by a party, such action may well fall within the lack of due care which constitutes negligence and may also be correctly termed an assumption of risk." [563 P.2d at 1250.] The Court referred to the statutory language that "contributory negligence includes assumption of risk" under the comparative negligence statute and stated that the statute "indicates a clear legislative intent to recognize the doctrine of 'assumption of risk' as an aspect of contributory negligence in Utah law." [*Ibid.*] The Court held assumption of risk should be

---

4. Comparative principles as to a plaintiff's and defendant's liability in causing personal injury were recently held to apply in strict liability cases. *Mulherin v. Ingersoll-Rand Co.,* Utah, 628 P.2d 1301 (1981).

treated in a comparative manner as an aspect of contributory negligence. Nevertheless, the Court did approve the giving of instructions on both assumption of risk and contributory negligence.

■ Even though decided after the appeal in this case, the principles governing the relationship of contributory negligence and assumption of risk enunciated in *Jacobsen* are controlling here. Since the duty of the plaintiff and the consequences of a breach thereof were explained to the jury in appropriate language, there was no error in not giving an instruction on secondary assumption of risk in addition to a contributory negligence instruction. In short, we do not think that instructions on both contributory negligence and assumption of risk in this case were necessary. To the extent that *Rigtrup* is inconsistent with this opinion, it is hereby overruled. It follows from what has been stated that it was not error to refuse to require the jury to make a specific additional finding in the language of assumption of risk beyond that required in the contributory negligence interrogatory. Further support for the conclusion is found in the fact that defendant's proposed assumption of risk instructions, which were not given, were erroneous and could not have provided a foundation for the interrogatory.[5]

Finally, there is no contention in this case that there was an agreement whereby plaintiff agreed to accept the danger here, nor was the relationship between plaintiff and defendant such that defendant had no duty of care to the plaintiff.

■ Defendant's final claim on appeal is that the jury should have been instructed that, as a matter of law, plaintiff was negligent and that the negligence was the sole cause of the injury, or alternatively that it was a proximate cause of the injury. The court correctly refused to give the instruction. Clearly there were factual issues both as to negligence on the part of both parties and as to the cause of the injury, and we are obliged to sustain the jury's findings because there was substantial evidence in the record to support those findings. *Maltby v. Cox Construction Co.*, Utah, 598 P.2d 336 (1979); *Gordon v. Provo City*, 15 Utah 2d 287, 391 P.2d 430 (1964).

The judgment is affirmed. Costs to plaintiff.

MAUGHAN, C. J., and WILKINS, J.,* concur.

HALL, Justice (dissenting):

It appears from the evidence that one of three things, or a combination thereof, could have caused plaintiff's injuries: 1) lack of a blade guard, 2) creeping of the blade, or 3) plaintiff's inattention.

The record contains no direct evidence that the lack of a blade guard or the creeping of the saw blade actually caused the accident. Plaintiff's expert witness did testify, however, as to the obvious nature of those two dangers. He opined that it was "plain to see" that the saw was "unreasona-

---

5. Indeed, defendant's proposed Instruction Nos. 11 and 12 on "assumption of risk" clearly incorporated classical contributory negligence language:

INSTRUCTION NO. 11
There is a legal principal [sic] commonly referred to by the term "assumption of risk" which is as follows:
One is said to assume a risk when he voluntarily manifests his assent to a dangerous condition and voluntarily exposes himself to that danger when he knows, or in the exercise of ordinary care would know, that a danger exists in the condition of the equipment or premises and uses the equipment and premises and voluntarily places himself or remains, within the position of danger.

INSTRUCTION NO. 12
Before the doctrine of assumption of risk is applicable, you must find: (1) the person in question must have actual knowledge of the danger, or the conditions must be such that he would have such knowledge if he exercised ordinary care, (2) he must have freedom of choice. This freedom of choice must have come from circumstances that provide him a reasonable opportunity, without violating any legal or moral duty to safely refuse to expose himself to the danger in question. An interrogatory based on those definitions of assumption of risk would have been improper.

* Wilkins, Justice, acted on this case prior to his resignation.

bly dangerous" since it lacked a blade guard, and since it "had a tendency to move" forward from the rest position. These dangers were certainly *obvious* to him since he based his opinion, not upon his operation or testing of the saw, but simply upon his brief observation of it, from which he theorized that the blade, turning up to 4,000 rpm, would cause "some movement of the blade." Anyone with plaintiff's experience and familiarity with saws could, and should have readily made the same observation before proceeding to use the saw.

Plaintiff's testimony as to causation was:

I took the two-by-four and I slid it in front of the one-by-four [guide] towards the nail [gauge] and against the one-by-four .... As I glanced over now to focus my attention on that nail and to make sure this edge of the two-by-four was up against the one-by-four, I felt the saw grab my thumb and yank my hand into the blade ....

In light of the foregoing explanation of the event by plaintiff, it matters not whether the "tendency of the blade to move" was an obvious danger, since it seems that it could not have been a cause of the accident anyway. This is to be seen in that had the blade in fact crept forward, it would necessarily have come to rest when it came in contact with the two-by-four plaintiff was positioning to cut. Certainly, without manual assistance, the blade could not have cut through the two-by-four which it would have had to do to reach plaintiff's hand. This assumes, of course, that plaintiff's hand was properly positioned on the front side of the two-by-four, away from the blade.

Inasmuch as the jury found negligence on the part of the plaintiff, it apparently concluded that plaintiff did not properly position his hand on the front side of the two-

by-four, away from the blade, but that by inattention or otherwise, he reached over the two-by-four to the back side thereof, and into the blade.

When viewed in light of all of the facts of this case, I deem the error in failing to give an "obvious danger" instruction as not merely harmless. The failure to give an instruction to which a party is entitled may constitute reversible error if it tends to: 1) mislead the jury to the prejudice of the complaining party; or 2) insufficiently or erroneously advises the jury as to the law.[1] In this case, the absence of an obvious danger instruction may well have prevented a proper determination as to whether defendant was negligent in the first instance. Therefore, I view the error as prejudicial.

What has heretofore been said applies equally to the court's refusal to instruct the jury on the doctrine of assumption of risk. Notwithstanding the position taken by the main opinion, I view the case of *Rigtrup v. Strawberry Water Users Association*[2] as standing for the proposition that the doctrine of assumption of risk remains a viable defense, it being consistent with the concepts of comparative fault as delineated in the Comparative Negligence Act.[3] Moreover, Rule 8(c), U.R.C.P., specifically designates *both* assumption of risk *and* contributory negligence as affirmative defenses.

Application of the doctrine of assumption of risk requires knowledge by plaintiff of a specific defect or dangerous condition.[4] Assumption of the risk and contributory negligence are distinct legal doctrines. The former applies where one voluntarily exposes himself to known danger, and the latter applies where one negligently fails to discover the danger.[5] Situations may arise where the two doctrines may overlap as noted by Dean Prosser:

1. *State v. Ouzounian*, 26 Utah 2d 442, 491 P.2d 1093 (1971); see also, *Rowley v. Graven Brothers & Co.*, 26 Utah 2d 448, 491 P.2d 1209 (1971).

2. Utah, 563 P.2d 1247 (1977).

3. U.C.A.1953, 78-27-37.

4. *Ferguson v. Jongsma*, 10 Utah 2d 179, 350 P.2d 404 (1960); *Johnson v. Maynard*, 9 Utah 2d 268, 342 P.2d 884 (1959); see also, *Foster v. Steed*, 23 Utah 2d 148, 459 P.2d 1021 (1969).

5. *Kuchenmeister v. Los Angeles and S.L.R. Co.*, 52 Utah 116, 172 P. 725 (1918); see also, *Clay v. Dunford*, 121 Utah 177, 239 P.2d 1075 (1952).

Obviously the two may co-exist when the plaintiff makes an unreasonable choice to incur the risk; but either may exist without the other. The significant difference, when there is one, is likely to be one between risks which were in fact known to the plaintiff, and risks which he merely might have discovered by the exercise of ordinary care.[6]

In the past, the terms have often been rather loosely applied. This was so because each was a complete defense to a negligence action, that is, whether one knowingly or negligently "assumed the risk," the result was the same—no recovery. When the legislature passed our Comparative Negligence Act, *supra*, it specifically recognized the doctrine of "assumption of the risk" and included it within the term "contributory negligence." Since the enactment thereof, this Court has held that assumption of risk remains a viable defense in Utah. In *Rigtrup, supra*, this Court approved the giving of instructions both on contributory negligence and assumption of risk. The matter was stated therein as follows:

> Though there have been some differences in view as to the defense of assumption of risk and its relation to other aspects of contributory negligence, it has since time immemorial been regarded as a valid defense in the law of this State. It has sometimes been said to be but a specialized aspect of contributory negligence in that it can be intermingled and fused with other aspects thereof in certain circumstances. It is also sometimes said to be something separate from contributory negligence, as it undoubtedly can be in some circumstances. However, it requires but little reflection to see that where there is a known danger, the risk of which is voluntarily assumed by a party, such action may well fall within the lack of due care which constitutes negligence and also may be correctly termed

an assumption of risk. [Citations omitted.] If such be the situation, the party should be charged with the responsibility for his conduct, by whatever term it may be called; and the comparative negligence statute quoted above should be applied. . . .

That our conclusion just stated is the correct one under our law is supported, not only by the reasoning just stated and the cases cited, but is made abundantly clear by the fact that the legislature, apparently in order to avoid any misunderstanding thereon, appended the last sentence as quoted above that: as used in this act, "contributory negligence" includes "assumption of the risk." That sentence indicates a clear legislative intent to recognize the doctrine of "assumption of risk" as an aspect of contributory negligence in Utah law. Therefore any attempt on our part to judicially abolish that defense would amount to a direct repudiation of the legislative expression and thus a clear usurpation of the legislative prerogative.[9]

[9] See *Becker v. Beaverton School Dist.*, 25 Or.App. 879, 551 P.2d 498, where the court refused to rule that a comparative negligence statute had completely abolished the defense of assumption of the risk.

Therefore, the negligence of a plaintiff who knowingly and voluntarily encounters a risk is to be compared with any of that of a defendant pursuant to the provisions of the Comparative Negligence Act, *supra*.[7]

In the instant case, plaintiff's knowledge and appreciation of the danger involved in operating the saw was a question for the jury,[8] and it was error for the court not to give an appropriate instruction on such assumption of risk.

I would reverse and remand for the purpose of a new trial.

CROCKETT, J., concurs in the dissenting opinion of HALL, J.

6. Handbook of the Law of Torts, William Prosser (4th ed.), § 68, at p. 441.

7. *Jacobsen Const. Co. v. Structo-Lite Engineering, Inc.*, Utah, 619 P.2d 306 (1980). It is to be noted that the holding in Jacobsen did not abol-

ish assumption of risk as a defense, but only *suggested* the abolition of "assumption of risk" terminology.

8. *Wold v. Ogden City*, 123 Utah 270, 258 P.2d 453 (1953).