491 P.2d 1093

**STATE of Utah, by and through its Road Commission, Plaintiff and Respondent,**

v.

**Albert R. OUZOUNIAN and Antonia A. Ouzounian, his wife, Defendants and Appellants.**

**No. 12328.**

Supreme Court of Utah.

Dec. 2, 1971.

George K. Fadel, Bountiful, for appellants.

Vernon B. Romney, Atty. Gen., Donald S. Coleman, Asst. Atty. Gen., Salt Lake City, for respondent.

CALLISTER, Chief Justice:

The State initiated this eminent domain proceeding to acquire a parcel of defendants' land for freeway purposes in the vicinity of Farmington, Utah. The tract involved had a frontage of 333 feet on Interstate Highway 15 and a depth of 120 feet. Situated upon this land were two double-faced advertising signs, which space the owners rented; the face of each sign was approximately ten feet by 34 feet. The pretrial order provided that the valuation of the land would include the sign business, since the signs could not be removed or relocated. Upon trial, the jury awarded defendants $8520, of which $8225 was for the land and improvements (signs) situated thereon.

On appeal, defendants seek a new trial on the ground that the trial court erred in its refusal to give certain instructions on the income approach to value and the statutory provisions for compensation for billboard signs. Defendants urge that the trial court by its instructions deprived the landowners of the right to have the jury consider their evidence fairly, impartially, and in light of the practical key to determining value, i. e., the potential to produce income.

One of the defendants, Mr. Ouzounian, testified that in his opinion the signs were worth $20,000 and the land was worth $5000. He further testified that he had received an average monthly rental of $126. The trial court admonished the jury that the business as such was not being pur-

chased, that the jury was to determine the fair market value of the property with the two signs on it, and that the jury would be given all the information which a buyer might take into consideration to the extent that it would affect a reasonable buyer and seller in making a bargain.

Defendants' expert witness, Mr. Larsen, appraised the land as worth $4500 and the sign and sign rights as $12,375. Mr. Larsen, to attain his valuation of property, used the capitalization of income approach; he testified that a rule of thumb for business investors in rental property is that the property is worth 100 times its monthly rental.

The State offered two witnesses. Mr. Williams used the market data approach and testified as to the value of the land only, which he appraised at $3620. (This figure included $295 for two easements, one permanent and one temporary.) Mr. Holbrook testified that he used the cost approach method in evaluating the signs, which he appraised at $4900; he further explained why he rejected the income approach as a valid method of evaluating outdoor advertising signs. The total appraisal of the defense witnesses was $8520, the exact amount of the verdict.

▉ Defendants assert that the trial court erred when it refused a proffered instruction concerning the income approach to arrive at fair market value.

In its instructions the trial court adequately defined fair market value, however, it elected not to elaborate by giving instructions regarding the three main approaches that the experts consider in making their evaluations of property. It should be noted that the witnesses, during their testimony, did explain these approaches, the ones they utilized, and the reasons therefor. In fact, an instruction on the income approach would have unduly emphasized one type of evidence concerning the evaluation process. On the other hand, separate instructions concerning the three methods to determine market value might, in the opinion of the trial judge, have unduly lengthened the instructions and led to confusion under the circumstances of the case.

A refusal to give an instruction cannot be the basis for reversal, unless the jury was insufficiently advised of the issue they were to determine, or it appears that they were confused or misled to the prejudice of the person complaining.[1] In the instant action, the issue the jury was to determine was fair market value; a review of the instructions reveals no insufficiency therein or do elements of confusion inhering to defendants' cause appear.

1. In re Richard's Estate, 5 Utah 2d 106, 111, 297 P.2d 542 (1956).

■ Defendants excepted to an instruction wherein the trial court informed the jury that defendants were not entitled to compensation for any alleged loss of profits to the business conducted on the premises. The instruction further stated that the reason for this rule was that profits by their nature were dependent on many factors, which may not be accurately determined, and to this extent loss of profits may be speculative or conjectural and should, therefore, not be considered in arriving at a verdict. Defendants contend that this instruction confused the jury because the trial court failed to explain and distinguish between alleged loss of profits to the business conducted on the premises from the rental income approach to evaluation.

The asserted confusion is not apparent, and the instruction clearly sets forth the law. Business profits are not the subject of independent compensation aside and apart from the market value of the land seized, upon which the business has been conducted. The condemnor does not acquire the going-concern value of the business, and the owner's proof of loss thereof is speculative.[2]

. . . the business conducted upon land is generally considered entirely distinct from the market value of the land and therefore has no determinative influence upon it, except insofar as it illustrates one of the uses to which the land taken may be put. The general rule in this country is that such business and the fruits thereof are too uncertain, remote and speculative to be used as the criterion of the market value of the land upon which such business is conducted. Neither the value of such business nor the profits therefrom are ordinarily considered, insofar as the market value of the land upon which the business is conducted is concerned . . . .[3]

■ Defendants further excepted to an instruction concerning the landowners and their opinion as to the value of their property. In the second paragraph of this instruction the trial court stated:

In considering the weight to be given to their testimony on value, you may consider their bias, personal involvement, experience and qualification to testify on land value, as well as the reasons and bases for their opinion. You may give to such opinion whatever weight, in light of the circumstances and evidence adduced, you may deem fit.

Defendants contend that another instruction informed the jury that they should

2. New Jersey Highway Authority v. Rue, 41 N.J.Super. 385, 125 A.2d 305, 307 (1956).

3. 4 Nichols on Eminent Domain, Sec. 13.3 [1], pp. 13–166—13–170.

consider bias or interest in the result "if any has been shown"; while the objectionable instruction has no such qualification but proclaims the landowners' bias and involvement.

This objection and alleged error, if such it be, clearly falls within the purview of Rule 61, U.R.C.P., concerning harmless error. Defendants do not contend that this instruction affected their substantial rights; and, in fact, there is no basis to support such an allegation.[4]

Finally, defendants claim error on the ground that the trial court refused to give an instruction concerning statutory provisions for compensation to landowners for billboard signs under the Utah Outdoor Advertising Act, 27–12–136.11, U.C.A.1953, as amended 1967. Such an instruction was irrelevant because the instant proceeding was not under this act.

The judgment of the trial court is affirmed. No costs awarded.

TUCKETT, HENRIOD, ELLETT, and CROCKETT, JJ., concur.

---

4. See 5 Nichols on Eminent Domain, Sec. 18.4 [2], pp. 18–106—18–114, wherein it is stated: ". . . The weight of his testimony is for the jury, and it is generally understood that the opinion of the

owner is so far affected by bias that it amounts to little more than a definite statement of the maximum figure of his contention, . . . ."