496 P.2d 888

Thomas **CARROLL**, individually and as guardian ad litem for Andrew Carroll, a minor, et al., Plaintiffs and Respondents,

v.

**STATE of Utah By and Through its ROAD COMMISSION, Defendant and Appellant.**

No. 12565.

Supreme Court of Utah.

May 2, 1972.

Merlin R. Lybbert and Lowell N. Hawkes, of Worsley, Snow & Christensen, Salt Lake City, for defendant and appellant.

Ramon N. Child and James L. Wilde, of Ray, Quinney & Nebeker, Salt Lake City, for plaintiffs and respondents.

CALLISTER, Chief Justice:

Plaintiffs, who were tourists from Illinois, initiated this action to recover for personal injuries and property damage sustained when the automobile in which they were riding plunged into a wash bisecting the road upon which they were traveling. This action was tried before a jury and a verdict was returned in favor of plaintiffs; the trial court rendered judgment thereon. Defendant appeals therefrom.

On August 6, 1968, plaintiffs were traveling in a northerly direction on State Highway 24 from Hanksville, Utah. Anna Mae Carroll was driving the vehicle; her father-in-law, Joseph P. Carroll, was seated beside her; in the back seat, her husband, Thomas, was seated with their two young boys, Andrew and Mathew, and Thomas' mother, Louise. In the morning, Anna Mae and her husband had consulted a map distributed by the Utah State Department of Highways. They determined to follow State 24 to its northern terminus where it intersected a highway running eastward to Colorado. As plaintiffs proceeded northerly, they arrived at a junction controlled by a stop sign. The intersecting road appeared new; there were two signs near the intersection, one designated the new road as 6 and 50; the other indicated that Price was to the west and Green River was to the east. After stopping at the traffic control device, plaintiffs proceeded northerly along the road that appeared to be a continuation of State 24. Both the north and south sides of the road appeared identical, both had cattle guards, right of way fences with cattle gates, and stop signs. The road surfaces were identical and had painted center lines. Plaintiffs were traveling at approximately 50 to 60 miles per hour, when Anna Mae observed what appeared to be dirt or a shadow across the road, she took her foot off the gas pedal. Upon realization that there was a cut in the road, she screamed a warning and applied the brakes, but the vehicle plunged into the wash.

The evidence adduced at trial revealed that the new road encountered by plaintiffs at the junction was intended to replace 4.3 miles of the old Highway 50 and 6, including where the old highway had formerly intersected State 24. This new highway had been completed in the latter part of 1967. In November 1967, State Road crews removed four metal culverts from a wash across the old highway; two were five feet and two were six feet in diameter and each was separated by eight feet of

dirt. The road surface and the dirt covering the pipe were removed and shaped into berms approximately five feet high, which extended across the width of the road, on both sides of the wash. On the day of the accident, these earthen berms had disappeared; a witness for defendant was of the opinion that they had been shoved into the wash. All witnesses, who testified as to the conditions of the area, agreed that there were no warning or control signs between the intersection and the accident site. The road surface leading to the wash had not been scarified. The evidence further indicated that the segment of the old highway had been abandoned on March 29, 1968, by means of a resolution by the State Road Commission. Plaintiffs further presented a witness, who had made on-the-scene calculations; he testified that at a point 220 feet prior to the end of the hard surface at the wash, all one could observe was some dirt across the road; one could first observe that there was a cut or hole in the road at a point 196 feet from the end of the hard surface of the road.

The evidence concerning the existence of the berms was in sharp conflict. Several witnesses who had occasion to travel the area testified that they had never observed the dirt barriers. On the other hand, the defendant presented witnesses who testified as to their observations of the berms from November 1967 until the first part of July 1968, a month prior to the accident.

Plaintiffs have emphasized the photographs taken on the day of the accident, which indicate the existence of weed growth on the dirt in the wash, where allegedly the berms were recently pushed according to defendant.

■ On appeal defendant urges that the trial court erred when it refused to rule, as a matter of law, that the State was immune from liability because the alleged negligence arose out of the exercise of a discretionary function.

Section 63–30–10, U.C.A.1953, as amended 1965, provides:

> Immunity from suit of all governmental entities is waived for injury proximately caused by a negligent act or omission of an employee committed within the scope of his employment except if the injury:

> (1) arises out of the exercise or performance or the failure to exercise or perform a discretionary function, whether or not the discretion is abused,

> . . . .

Plaintiffs' claim was predicated on the theory that defendant had negligently created a dangerous condition on the roadway without providing a reasonably adequate means of advising or protecting the public concerning the same and that such negligence was the proximate cause of plaintiffs' damages. Defendant claims that its

maintenance supervisor exercised his discretion when he determined to install berms as a means of protection and that he determined that berms were a better means than signs, which frequently ended up in some farmer's corral.

In Edmunds v. Germer,[1] this court cited with approval the principle that where an old road has been abandoned, travelers must be protected, at least by being notified in some adequate way of the fact that the old road has been abandoned. This court observed that in some cases the courts have held that barricades or notices warning the public of the danger of continuing to use the old road must be so placed as to put unwary and unsuspecting traveler upon his guard. In the recent case of Bramel v. Utah State Road Commission,[2] this court affirmed a judgment against the Road Commission, wherein the Commission was found to have failed to discharge its duty of exercising reasonable care under the circumstances by placing *adequate* and *appropriate* warning signs for the safety of the traffic using the highway.

Defendant now claims immunity by urging that the selection of adequate and appropriate warning devices is a discretionary function. In Rogers v. State,[3] the same claim of immunity was urged under a similar statutory provision, which, as Utah's, was patterned after the Federal Tort Claims Act. In the Rogers case, the plaintiff-motorist turned to the left because he was misled into thinking that the main highway went in that direction, by the surface appearance of the roads, center line stripings, road signs, and route numbers, which he observed as he approached the intersection. The trial court found that the State was negligent in creating and permitting the conditions to exist and concluded that such negligence was the sole proximate cause of the accident. The State contended that discretion on the part of a State employee was involved in the placement of road signs and restriping of pavements, in that such determinations were made after the district maintenance engineer had made a visual observation and decided on the location, taking into consideration such factors as the geographical area involved, the amount of rain, and the volume of traffic in the area.

The court stated that to sanction the State's position was to emasculate the State Tort Liability Act and quoted a statement that every action of a government employee, except a conditioned reflex action, involved the use of some degree of discretion. The court referred to the case law developed under the discretionary ex-

1. 12 Utah 2d 215, 217–218, 364 P.2d 1015 (1961).

2. 24 Utah 2d 50, 465 P.2d 534 (1970).

3. 51 Haw. 293, 459 P.2d 378, 381 (1969).

ception in the federal act and discussed the distinction between acts performed at a planning level and those performed at the operational level. The court observed that acts done in accordance with operational level decisions do not come within the discretionary function exception. The court stated that the conclusion may be drawn that operational level acts are those which concern routine, everyday matters, not requiring evaluation of broad policy factors. The court concluded:

> Here, such matters as the kinds of road signs to place and where to place them, and which center line stripings to repaint and when to repaint them, did not require evaluation of policies but involved implementation of decisions made in everyday operation of governmental affairs. Consequently, the circuit court did not err in holding that the State's negligence in this case did not come within the discretionary function exception.

In Johnson v. State,[4] the court rejected a literal interpretation of "discretionary" insofar as that term implied that the mere existence of some alternatives confronting an employee did not compel a holding that the governmental unit thereby attained a status of nonliability. The court stated that these alternatives may well play a major part in the resolution of the substantive question of negligence, but they did not dispose of the threshold question of immunity. The court cited several decisions to illustrate and reaffirm the principle that although basic policy decisions are allowed immunity, this exception is not extended to the ministerial implementation of that basic policy. The court stated that most of the cases involve failure to warn of foreseeable dangers flowing from the basic, immune decision. The court further observed that a valid consideration in evaluating a factual situation was whether there was a reason for sovereign immunity, i. e., did the employee's decision as to warnings rise to the level of governmental decisions toward which judicial restraint should be exercised.

In the instant action, the decision of the road supervisor to use berms as the sole means of protection for the unwary traveler was not a basic policy decision essential to the realization or accomplishment of some basic governmental policy, program, or objective. His decision did not require the exercise of basic policy evaluation, judgment, and expertise on the part of the Road Commission.[5] His determination may properly be characterized as one at

---

4. 69 Cal.2d 782, 73 Cal.Rptr. 240, 447 P.2d 352, 358, 362, 363 (1968).

5. See Evangelical United Brethren Church of Adna v. State, 67 Wash.2d 246, 407 P.2d 440, 445 (1966).

the operational level of decision making,[6] and the trial court did not err in its ruling that the discretionary exception of Section 63–30–10(1) of the Governmental Immunity Act was not a defense to the alleged acts of negligence. The trial court further did not commit error by its refusal to give an instruction which embodied this same discretionary defense.

■ Defendant further asserts that it constituted prejudicial error for the trial court to refuse its requested instruction 29, wherein it was stated that if Anna Mae failed to observe or heed the signs at the junction, such conduct was negligent.

The trial court properly refused this instruction which would have foreclosed consideration by the jury of the reasonableness of the conduct of Anna Mae under the facts and circumstances of this action, as well as the issue of proximate cause. The requested instruction, in effect, stated that Anna Mae was negligent as a matter of law for her failure to make a right turn at the intersection, regardless of the fact that the highway upon which she was traveling appeared to continue beyond the intersection.

■ A review of the instructions in the instant action clearly reveals that the jury was sufficiently advised of the issues that they were to determine, and there was nothing to indicate that the jury was confused or misled to the prejudice of defendant; therefore, the refusal to give defendant's requested instructions cannot be the basis for reversal.[7]

■ Defendant further asserts that the negligence of Anna Mae was the sole proximate cause of the accident. Defendant reasons that the Carrolls were relying on the map which indicated that State 24 terminated at its intersection with U.S. 6–50, and that plaintiffs intended to take U.S. 6–50 to Colorado; therefore, Anna Mae was negligent when she did not heed the road sign at the junction which corresponded with the map and instead crossed the highway she intended to take onto abandoned State 24.

The evidence in the instant action, even if construed in the manner advocated by defendant, creates a doubt about which one of two causes was the proximate cause of the injuries sustained so that the question could reasonably be found one way or another. Under such circumstances, the question was one of fact and was properly submitted to the jury.[8]

■ Finally, defendant asserts that comments of plaintiffs' counsel constituted

---

6. Ramos v. County of Madera, 4 Cal.3d 685, 94 Cal.Rptr. 421, 484 P.2d 93, 99 (1971).

7. State v. Ouzounian, 26 Utah 2d 442, 444, 491 P.2d 1093 (1971).

8. Nyman v. Cedar City, 12 Utah 2d 45, 49–50, 361 P.2d 1141 (1961).

prejudicial error in that the remarks tended to create sympathy and prejudice in the minds of the jury. Without prolonging this opinion, it is suffice to observe that the effect of these remarks was fully considered by the trial court when it ruled on defendant's motion for a new trial. There is no basis in the record to conclude that the trial court abused its discretion in denying the motion.

The judgment of the trial court is affirmed. Costs to respondents.

TUCKETT and HENRIOD, JJ., concur.

ELLETT, Justice (concurring).

I concur in the decision with one exception: I am not prepared to state the law to be that "discretion" which will excuse the State from liability must be *basic policy decisions*. Nor am I willing to say now that there can be no immunity from liability where the discretion is at the *operational level*. It may be that the law is as stated, but the facts of this case do not require us to so hold. Under the evidence given the jury could have found there never was a berm placed in front of the area where the culvert was removed. Even if a warning berm was originally constructed, the evidence was clear that the State failed to maintain it in place.

If the question of immunity rested on the use of a berm as against a scarification of the surface of the highway, then it would seem that discretion as to which method to use would be a defense to the State under the statute, and I am unable to see where any difference should be made if an order for one over the other was made by the Commission, or by the road foreman at the operational level.

In this case there was no place for discretion to give or not to give an adequate warning to the motoring public. The duty on the part of the State to give and maintain a reasonably adequate warning was absolute, and I am unable to see where discretion is involved.

CROCKETT, J., concurs, and also concurs in the opinion of ELLETT, J.