Merlene FRANK, Plaintiff and Appellant,

v.

STATE of Utah, Martin Nalder and Jed Erickson, Defendants and Respondents.

No. 16263.

Supreme Court of Utah.

June 12, 1980.

3. *Martin v. District Court of Comanche County*, Okl., 460 P.2d 898, 899 (1969); 60 C.J.S. Motions & Orders § 42, p. 63.

John L. Black of Roberts, Black & Dibblee, Salt Lake City, for plaintiff and appellant.

Robert B. Hansen, Atty. Gen., Merlin R. Lybbert and David G. Williams of Snow, Christensen & Martineau, Salt Lake City, for defendants and respondents.

HALL, Justice:

Plaintiff appeals the summary judgment granted in favor of defendants Jed Erickson and the State of Utah on the basis of sovereign immunity.

We glean the facts of this matter from the complaint and the responses to interrogatories on file.[1] Jack Mayo Alger, plaintiff's son, committed suicide on or about March 9, 1976. Mr. Alger had been a student at the University of Utah, during which time he had undergone treatment at the University of Utah Medical Center, a hospital and research facility owned and operated by the State of Utah. Treatment and care of Mr. Alger were under the supervision of Dr. Martin Nalder, a staff psychiatrist with the hospital, and Mr. Jed Erickson, a psychologist with Salt Lake County Mental Health working with the hospital pursuant to a contractual arrangement.

Plaintiff alleges that, prior to his death, Alger notified those charged with his care that he had previously made attempts to take his own life. Notwithstanding this, asserts plaintiff, no action was taken to restrain, counsel, or assist Alger; on the contrary, he was permitted to leave the Medical Center hospital and go his way unsupervised.

Following Alger's death, plaintiff filed the present suit, joining the State of Utah, Nalder, and Erickson as defendants, and alleged negligent handling of Alger's case. Following discovery, defendants moved for summary judgment on the grounds that the State of Utah, as owner of the Medical Center, together with Mr. Erickson,[2] as an employee thereof, were protected by sovereign immunity as defined under Utah's Governmental Immunity Act.[3] This motion was granted, and plaintiff's suit dismissed.

Plaintiff asserts, on appeal, that neither the State of Utah nor Mr. Erickson should be sheltered by the doctrine of sovereign immunity, which has, by reason of the operation of the Utah Governmental Immunity Act, and the common law, no application to the present case. We agree, and reverse for a trial on the merits of plaintiff's claim.

Plaintiff argues that the state has no recourse to governmental immunity in the present action, in that (1) the maintenance of a hospital is proprietary in nature, and hence not a "governmental function" as used in the Act;[4] and (2) in any case, immunity is specifically waived by the Act in the present case, as the injury allegedly arose out of the negligent act of state em-

---

1. When reviewing the grant of a motion for summary judgment, an appellate court must take that view of the facts most favorable to the party opposing the motion. See Rule 56(c), Utah Rules of Civil Procedure; *Tanner v. Utah Poultry & Farmers Cooperative*, 11 Utah 2d 353, 359 P.2d 18 (1961).

2. Dr. Nalder was evidently dropped from the action, having never been served with process.

3. U.C.A., 1953, 63–30–1, et seq.

4. U.C.A., 1953, 63–30–3.

ployees acting within the scope of their employment.[5] Defendants counter with the claim that operation of a hospital is a "governmental function" within the meaning of the Act, and that no waiver of immunity occurred, in that the acts of the employees were discretionary in nature.[6]

As we recently noted,[7] the governmental-proprietary classification system has had a checkered history before this Court, the status of health care facilities operated by the state being no exception. A municipal hospital has been held to be proprietary,[8] while the Utah State Hospital was granted governmental immunity in a case involving the death of a mental patient,[9] the necessary implication being that the operation of the facility in question was a governmental function.

■ The Utah legislature resolved the health care classification question in 1978 by an amendment to the Governmental Immunity Act, whereunder governmental entities are granted immunity from suit for injury relating to the public ownership and operation of a hospital, nursing home, or other health care facility.[10] While the amended reenactment of the provision in question was not made expressly retroactive, and the present action arose prior to its passage, we are disinclined, as a matter of judicial policy, to disregard the obvious manifestation of legislative intent reflected in the amendment.[11] For this reason, we hold the operation of a governmentally-owned health care facility such as the University Medical Center to be a "governmental function" as contemplated by the statute prior to amendment.

5. U.C.A., 1953, 63–30–10.

6. U.C.A., 1953, 63–30–10(1).

7. See *Standiford v. Salt Lake City Corp.*, Utah, 605 P.2d 1230 (1980).

8. *Greenhalgh v. Payson City*, Utah, 530 P.2d 799 (1975).

9. *Emery v. State*, 26 Utah 2d 1, 483 P.2d 1296 (1971).

10. U.C.A., 1953, 63–30–3, as amended.

Such a classification, however, does not signal unconditional immunity under the statute, either before or after amendment. The provision granting immunity expressly states that:

*Except as may be otherwise provided in this act*, all governmental entities are immune from suit for any injury which results from the exercise of a governmental function, governmentally-owned hospital, nursing home, or other governmental health care facility. [Emphasis added.][12]

The grant of immunity is thus expressly subjected to the operation of other sections of the Act. One such section states, in that part here pertinent, that:

Immunity from suit of all governmental entities is waived for injury proximately caused by a negligent act or omission of an employee committed within the scope of his employment except if the injury: (1) arises out of the exercise or performance or the failure to exercise or perform a discretionary function, whether or not the discretion is abused . . .[13]

■ There can be little doubt that the present action alleges injury caused by the negligent act or omission on the part of state employees. In determining the State's immunity, the single viable question is whether or not the actions of defendants Nalder and Erickson constituted the execution of a discretionary function within the meaning of the Act.

In this regard, this Court has followed the lead of cases interpreting the Federal Tort Claims Act[14] by distinguishing between those decisions occurring at a broad, policy-making level and those taking place at the implementing "operational" level.[15]

11. See *Standiford v. Salt Lake City Corp.*, supra, footnote 7, at p. 1232, footnote 1.

12. Supra, footnote 10.

13. Supra, footnote 6.

14. 28 U.S.C. § 2671 et seq.

15. See generally 35 Am.Jur.2d, Federal Tort Claims Act, § 19.

In *Carroll v. State Road Commission*,[16] this Court, recognized that almost all acts require some degree of discretion, and observed that the exception to the waiver set forth in the Act should be confined to those decisions and acts occurring at the "basic policy-making level," and not extended to those acts and decisions taking place at the operational level, or, in other words, ". . . those which concern routine, everyday matters, not requiring evaluation of broad policy factors."[17]

The Court recognizes the high degree of careful observation, evaluation, and educated judgment reflected in any modern medical prognosis, and makes no suggestion that a large measure of "discretion," as commonly defined, is not involved. The exception to the statutory waiver here under consideration, however, was intended to shield those governmental acts and decisions impacting on large numbers of people in a myriad of unforeseeable ways from individual and class legal actions, the continual threat of which would make public administration all but impossible. The one-to-one dealings of physician and patient in no way reflect this public policy-making posture, and should not be given shelter under the Act. We therefore hold that immunity is waived by operation of the Act, and that the State of Utah may not escape liability by reason thereof.

Plaintiff next asserts that defendant Erickson, in his individual capacity, should not enjoy the protection of governmental immunity. Erickson's rejoinder is that immunity for him is proper on the same basis as was that of the State, i. e., that his act was also discretionary.

▮ The Utah Governmental Immunity Act has no application to individuals; its function is confined to governmental "enti-

ties."[18] Common-law principles of sovereign immunity have developed, however, which offer protection to the individual under certain circumstances.[19] The case of *Cornwall v. Larsen*[20] stands for the proposition that a governmental agent performing a discretionary function is immune from suit for injury arising therefrom, whereas an employee acting in a ministerial capacity, even though his acts may involve some decision making, is not so protected.[21] The purpose of such a distinction is similar to that set forth above for protecting governmental entities from suit for acts and decisions at the policy-making level—the desire to avoid clogging the mechanism of government with a glut of potential legal claims.[22] There thus appears no reason to apply a different legal standard to the individual than that applied to the government employer, even though the latter is governed by statute and the former by common law principles. For this reason, we hold that defendant Erickson's acts in this case were not legally discretionary, but ministerial.

Other reasons for the above holding are manifest. For one, it is contrary to reason to deny governmental immunity to a public employer and then grant it to the very employee allegedly causing the injury. Moreover, a grant of immunity in the present case would, of necessity, shield all practitioners employed, even under temporary contract from another source, by a governmental health care facility from any liability for malpractice.

The decision of the trial court is reversed and remanded for trial on the merits of plaintiff's claim. Costs to plaintiff.

MAUGHAN, WILKINS and STEWART, JJ., concur.

CROCKETT, C. J., concurs in result.

---

16. 27 Utah 2d 384, 496 P.2d 888 (1972).

17. Id., at p. 388, 496 P.2d at p. 891, citing *Rogers v. State*, 51 Haw. 293, 459 P.2d 378 (1969).

18. Supra, footnote 10; *Schmitt v. Billings*, Utah, 600 P.2d 516 (1979); *Madsen v. State*, Utah, 583 P.2d 92 (1978).

19. *Sheffield v. Turner*, 21 Utah 2d 314, 445 P.2d 367 (1968).

20. Utah, 571 P.2d 925 (1977).

21. See also *Connell v. Tooele City*, Utah, 572 P.2d 697 (1977).

22. Id.