Gregory A. BIGELOW and Marilyn Bigelow, Plaintiffs and Appellants,

v.

Brad INGERSOLL, Lee Ingersoll, Cache Valley Electric Company, a Utah Corporation, Salt Lake City Corporation, and the State of Utah, Defendants and Respondents.

No. 16305.

Supreme Court of Utah.

Sept. 24, 1980.

---

S. Rex Lewis of Howard, Lewis & Petersen, Provo, for plaintiffs and appellants.

Robert W. Miller, Salt Lake City, for Ingersoll.

John M. Chipman, Salt Lake City, for Cache Valley.

Robert B. Hansen, Atty. Gen., Allan L. Larson, Salt Lake City, for defendants and respondents.

STEWART, Justice:

This case arose out of the collision of two automobiles at the intersection of 500 West and 1300 South in Salt Lake City. The plaintiffs, Gregory A. Bigelow and Marilyn Bigelow, passengers in one of the automobiles, were injured. The Bigelows initially filed this action against the driver of the other car, Brad Ingersoll; Ingersoll's father; Cache Valley Electric Co., which had installed the electrical traffic control semaphore where the collision occurred; Salt Lake City Corporation; and the State of Utah. Plaintiffs filed an amended complaint dropping Salt Lake City as a defendant. The Ingersolls cross–claimed against Cache Valley Electric Co. and the State of Utah.

In essence the claim against the State of Utah is that it negligently designed the traffic control lights at the intersection. The State, the plaintiff, and the Ingersolls moved for summary judgment to determine the effect of the Utah Governmental Immunity Act, § 63–30–1 *et seq.*, Utah Code Ann. (1953), as amended, as to the potential liability of the State of Utah. The trial court held the State immune from suit. From that ruling this appeal is taken.[1]

1. In its order granting summary judgment, the trial court made a Rule 54(b), U.R.C.P., determination that there was no just reason to delay entry of judgment against the State, thereby enabling the plaintiffs to file this appeal.

Two issues are presented in this case. First, the State of Utah challenges the jurisdiction of this Court to hear this appeal on the ground the plaintiffs did not file a timely notice of appeal. Second, the plaintiffs contend that the trial court improperly held the acts of the State to be "discretionary" and therefore immune under the terms of the Utah Governmental Immunity Act.

On January 2, 1979, the trial court granted summary judgment in favor of the State of Utah and against the plaintiffs and cross–claimants. No certificate of mailing was attached to this order, and it was not served on opposing counsel. The trial court then signed a second order identical to the first except that it was dated January 15, 1979, and had attached a certificate of mailing to opposing counsel. Counsel for the State prepared both orders.

On January 31, 1979, a "Notice of Entry of Judgment" was filed by the State with the clerk of the district court. This notice, dated January 30, 1979, was addressed to the plaintiffs, the plaintiffs' attorney, the Ingersolls, and the Ingersolls' attorney, stating that a judgment had been entered January 15, 1979. Attached to the notice was a certificate of mailing. No other "Notice of Entry of Judgment" appears in the record.

The plaintiffs' attorney filed a notice of appeal February 8, 1979. This notice states that the plaintiffs appealed from the judgment entered January 15, 1979. The State of Utah now contends that the plaintiffs' notice of appeal was not timely filed and that therefore this Court has no jurisdiction to entertain the appeal.

Plaintiffs in this case not only received from defendant a copy of the January 15 order and judgment prior to presentment to the court for the judge's signature, but subsequently received from defendant a signed copy of the same judgment attached to a notice of entry of judgment. The dual notice of the latter judgment, absent any notice or reference to the initial judgment, established a clear indication on defendant's part that defendant did not consider the earlier filing an effective entry of judgment.

■ A notice of appeal must be filed within one month from the entry of judgment as specified by Rule 73(a), Utah Rules of Civil Procedure. *In re Ratliff's Estate*, 19 Utah 2d 346, 431 P.2d 571 (1967); *Anderson v. Anderson*, 3 Utah 2d 277, 282 P.2d 845 (1955). In this case there are two identical judgments, but only one "Notice of Entry of Judgment" served on the opposing parties which refers to the date of the latest judgment filed in accordance with Rule 58A, U.R.C.P.

■ Rule 2.9(b) of the District and Circuit Court Rules of Practice requires that copies of a proposed judgment be served on opposing counsel before being presented to the court. The notice requirement of Rule 2.9(b) of the District and Circuit Court rules is supplemental to and not inconsistent with Rule 58A, U.R.C.P. To harmonize and give proper effect to these rules, we hold that compliance with Rule 2.9(b) is necessary in order that a judgment be properly "filed" as that term is used in Rule 58A(c), U.R. C.P.

Practical considerations and fairness in appellate procedure support this conclusion. Prior to promulgation of Rule 2.9(b), counsel were obliged to constantly check with the court clerk to determine whether a judgment had been filed. On occasion, because of the press of other business and the lack of notice, filing dates were missed and what may have been meritorious appeals, dismissed. The District Court and Circuit Court Rules were designed in part to obviate this problem. Proper effectuation of both rules requires that Rule 2.9(b) of the District and Circuit Court Rules be read together with Rule 58A of the Utah Rules of Civil Procedure.[2]

---

2. *In re Bundy's Estate*, 121 Utah 299, 310, 241 P.2d 462, 467 (1952), held that a judgment is complete and entered when signed and filed. However, as stated in the text, we hold that a judgment is not filed when notice of filing must be given the opposing side and no notice is given.

■ The January 15 judgment, like the earlier one, was submitted by the prevailing party to the lower court but, unlike the judgment dated January 2, had no mailing certificate establishing that notice had been provided to opposing counsel. Since the second judgment was the only one which complied with both the state and local rules and hence was the only one properly "filed" within the meaning of Rule 58A, the notice of appeal was properly filed based on the judgment filed January 15.

Plaintiffs' position is that the collision in which they were injured occurred because of a dangerously designed, constructed, and maintained electric traffic–control semaphore, or series of semaphores, at the intersection of 500 West and 1300 South in Salt Lake City.

According to uncontroverted facts, as the car in which the plaintiffs were passengers traveled westward on 1300 South to make a left turn at the intersection of 500 West and 1300 South, the eastbound traffic at 500 West was stopped, and it appeared safe to the driver of that vehicle to complete his left turn. However, the red light which controlled the eastbound traffic turned green during the time the light controlling the traffic from the opposite direction, which was moving into the intersection for left turns as well as forward movement, remained green. As the driver of the plaintiffs' car was completing a left turn, a car in the southernmost eastbound lane, driven by defendant Brad Ingersoll, collided with the plaintiffs' car, hitting it broadside.

Plaintiffs argue that the trial court erred in ruling that plaintiffs' action was barred by sovereign immunity and that the State is not liable under § 63–30–8, which provides:

Immunity from suit of all governmental entities is waived for any injury caused by a defective, unsafe, or dangerous condition of any highway, road, street, alley, crosswalk, sidewalk, culvert, tunnel, bridge, viaduct or other structure located thereon.

Contrary to the State's position, plaintiffs contend that § 63–30–8 is not modified by § 63–30–10(1) which provides that the negligent acts of governmental employees are not actionable if done in the exercise of a discretionary function. That is, they contend that § 63–30–8 imposes liability for injury from any "defective, unsafe, or dangerous condition . . ." regardless of the degree of discretion involved. Section 63–30–10(1) states:

Immunity from suit of all governmental entities is waived for injury proximately caused by a negligent act or omission of an employee committed within the scope of his employment except if the injury:

(1) arises out of the exercise or performance or the failure to exercise or perform a discretionary function, whether or not the discretion is abused . . . .

The State contends (1) that the design of a system of traffic semaphores is a discretionary function for which immunity is preserved pursuant to § 63–30–10(1), and (2) that the design of the traffic control system was neither defective nor unreasonably dangerous.

The trial court granted judgment in favor of the State on the ground "the State of Utah is immune as the acts complained of constituted a discretionary function." The trial court did not rule on the issue whether the design of the traffic control system at 500 West and 1300 South was either defective or unreasonably dangerous.

■ According to the definition of discretion established in *Frank v. State*, Utah, 613 P.2d 517 (1980), a discretionary function under § 63–30–10(1) is "confined to those decisions and acts occurring at the 'basic policy making level,' and not extended to those acts and decisions taking place at the operational level, or, in other words, '. . . those which concern routine, everyday matters, not requiring evaluation of broad policy factors.'" Although the acts of the State involved in designing the traffic control system involve some degree of discretion, as do almost all acts, the design of the traffic control system does not involve the "basic policy making level."

This conclusion follows earlier cases dealing with similar subject matter. This Court in *Andrus v. State*, Utah, 541 P.2d 1117 (1975), held that the preparation of plans and specifications, and the supervision of the manner in which the building of a highway was carried out, were nondiscretionary functions. In *Carroll v. State Road Commission*, 27 Utah 2d 384, 496 P.2d 888 (1972), the Court held that a road maintenance supervisor's decision to use berms as the best means of protection was not a basic policy determination and was not within the discretionary function exception of § 63–30–10(1).[3]

In light of the foregoing, we find the defense of § 63–30–10(1) was inappropriately applied to this cause of action. The summary judgment entered by the lower court is reversed, and the case is remanded for further proceedings consistent with the views expressed herein.

CROCKETT, C. J., and MAUGHAN, WILKINS and HALL, JJ., concur.

---

**3.** In *Sanford v. University of Utah*, 26 Utah 2d 285, 488 P.2d 741 (1971), this Court, on the facts of that case, rejected the notion that the Legislature intended § 63–30–10 to modify §§ 63-30–8 and 9. The Court, dealing with a claim for relief that was not necessarily founded on negligence, stated:

Since the waiver of immunity in Secs. 8 and 9 encompasses a much broader field of tort liability than merely negligent conduct of employees within the scope of their employment, the legislature could not have intended that Sec. 10, including its exceptions, should modify Secs. 8 and 9, even though it be conceded that the negligent conduct of an employee might be involved in an action for injuries caused by the creation or maintenance of a dangerous or defective condition. [26 Utah 2d at 292, 488 P.2d at 745.]