Cynthia L. KEEGAN, personally and as the personal representative of the Estate of David J. Keegan, Plaintiff, Appellant, and Cross–Appellee.

v.

STATE of Utah and the Utah Department of Transportation, Defendants, Appellees, and Cross–Appellants.

Nos. 930302, 930346.

Supreme Court of Utah.

March 7, 1995.

Rehearing Denied May 30, 1995.

Carolyn Nichols, George M. Haley, Greggory J. Savage, Jo Carol Nesset–Sale, Salt Lake City, for plaintiff.

Jan Graham, Atty. Gen., Annina M. Mitchell, Brent A. Burnett, Asst. Attys. Gen., Salt Lake City, for defendants.

RUSSON, Justice:

Cynthia L. Keegan appeals the trial court's order reducing her damages in a wrongful death action from $500,000 to $250,000 pursuant to the damage cap provision of the Utah

Governmental Immunity Act, Utah Code Ann. § 63–30–34. The Utah Department of Transportation (UDOT) and the State of Utah (the State) cross-appeal the trial court's dismissal of their motion for summary judgment. We reverse and remand on the cross-appeal.

## FACTS

This action arises out of a single vehicle accident which occurred on Interstate 80 in Parley's Canyon on January 9, 1990, at approximately 7:30 a.m. David Keegan's vehicle was eastbound on I–80 when it skidded on black ice, climbed the concrete median barrier separating the eastbound and westbound lanes, slid along the top of the barrier, and collided with a bridge support pillar. Mr. Keegan died as a result of this accident.

Mrs. Keegan filed a wrongful death action against UDOT and the State, alleging that they were negligent in failing to maintain the median barrier in a reasonably safe manner. She specifically asserted that although the barrier had originally been constructed in accordance with safety standards promulgated by the American Association of State Highway and Transportation Officials (AASHTO), two subsequent surface overlay projects had shortened the barrier below AASHTO standards, rendering the barrier unsafe.

UDOT and the State moved for summary judgment, arguing that the decision not to raise the concrete median barrier during the surface overlay projects was a discretionary act shielded from liability by governmental immunity under Utah Code Ann. § 63–30–10(1) (1989), which reads in relevant part:

> Immunity from suit of all governmental entities is waived for injury proximately caused by a negligent act or omission of an employee committed within the scope of employment except if the injury:
>
> (a) arises out of the exercise or performance or the failure to exercise or perform a discretionary function, whether or not the discretion is abused[.]

Mrs. Keegan responded that a cause of action brought under Utah Code Ann. § 63–30–8 (1989), which provides that "[i]mmunity from suit of all governmental entities is waived for any injury caused by a defective, unsafe, or dangerous condition of any highway," is not subject to the exceptions set forth in section 63–30–10, including the discretionary function exception, and therefore, discretionary function analysis has no application to the present case. The trial court summarily denied defendants' motion for summary judgment.

Following trial, the jury returned a special verdict finding that defendants were negligent as alleged by Mrs. Keegan and that their negligence was the sole proximate cause of the death of Mr. Keegan. The jury awarded Mrs. Keegan damages of $500,000. The trial judge reduced the award to $250,000 pursuant to the damage cap provision of the Utah Governmental Immunity Act, Utah Code Ann. § 63–30–34, which provides in pertinent part:

> (1)(b) A court may not award judgment of more than $250,000 for injury or death to one person regardless of whether or not the function giving rise to the injury is characterized as governmental.

Mrs. Keegan appeals, challenging the constitutionality of the cap provision of section 63–30–34. UDOT and the State cross-appeal the denial of their motion for summary judgment.[1] Because defendants' appeal of the denial of their motion for summary judgment is dispositive of this case, we address defendants' cross-appeal first.

## DISCRETIONARY FUNCTION IMMUNITY

█ To determine whether a governmental entity is immune from suit under the Utah Governmental Immunity Act (the Act), three questions must be answered: (1) Was the activity undertaken by the entity a governmental function and therefore immunized from suit under the general grant of immuni-

---

1. UDOT and the State also appeal the trial court's denial of their motion to compare the fault of the Federal Highway Administration. However, because we dispose of this case on the ground that defendants' motion for summary judgment was incorrectly denied, we do not address defendants' comparative fault argument on appeal.

ty contained in Utah Code Ann. § 63–30–3? (2) If the activity undertaken was a governmental function, has another section of the Act waived that blanket immunity? (3) If immunity has been waived, does the Act contain an exception to that waiver resulting in a retention of immunity against the claim asserted? *Ledfors v. Emery County Sch. Dist.,* 849 P.2d 1162, 1164 (Utah 1993).

As to the first question, the test for determining whether the activity undertaken is a governmental function focuses on whether that activity "is of such a unique nature that it can only be performed by a governmental agency or that it is essential to the core of governmental activity." *Standiford v. Salt Lake City Corp.,* 605 P.2d 1230, 1236–37 (Utah 1980). In the present case, neither party contests that activities related to the construction and maintenance of state highways can only be performed by governmental agencies; accordingly, for purposes of this appeal, we will assume that such activities fit within the ambit of this test.

The next question is whether another section of the Act has waived immunity. This question must also be answered in the affirmative here because Utah Code Ann. § 63–30–8 (1989) specifically waives immunity "for any injury caused by a defective, unsafe, or dangerous condition of any highway." *Id.*

Having determined (1) that the activity in question is a governmental function subject to the immunity provisions of section 63–30–3 and (2) that blanket immunity has been waived by section 63–30–8, we are left with the question of whether the Act provides an exception to the waiver provisions of section 63–30–8 that results in the government retaining immunity against the claim asserted. *See Ledfors,* 849 P.2d at 1164. In other words, does the discretionary function exception set forth in section 63–30–10 apply to section 63–30–8, thereby resulting in the retention of immunity in the present case? Defendants argue that section 63–30–10 does apply to section 63–30–8 and offer two alternative grounds in support of their argument: first, they argue that the 1991 amendment to section 63–30–8, which explicitly supports their position, should be applied retroactively, and second, they assert that even under

the prior law, section 63–30–10 applies to section 63–30–8. Keegan responds that section 63–30–10 does not apply to section 63–30–8 and, therefore, immunity has not been retained.

*Retroactive Application of
1991 Amendment to
Section 63–30–8*

■ UDOT and the State argue that the 1991 amendment to section 63–30–8, which explicitly provides that the waiver provisions therein are subject to the discretionary function exception of section 63–30–10, is a clarification of section 63–30–8 and therefore should be applied retroactively. Keegan responds that the 1991 amendment should not be applied retroactively because it affects her substantive rights.

Utah Code Ann. § 68–3–3 provides the general rule that statutes are not to be applied retroactively unless expressly so declared by the legislature. However, an exception exists for amendments clarifying statutes, which are applied retroactively, *State v. Higgs,* 656 P.2d 998, 1001 (Utah 1982); *Okland Constr. Co. v. Industrial Comm'n,* 520 P.2d 208, 210–11 (Utah 1974), so long as they " 'do not enlarge, eliminate, or destroy vested or contractual rights.' " *Board of Equalization v. Utah State Tax Comm'n ex rel. Benchmark, Inc.,* 864 P.2d 882, 884 (Utah 1993) (quoting *Pilcher v. State,* 663 P.2d 450, 455 (Utah 1983)).

Prior to the 1991 amendment, section 63–30–8 read:

> Immunity from suit of all governmental entities is waived for any injury caused by a defective, unsafe, or dangerous condition of any highway, road, street, alley, crosswalk, sidewalk, culvert, tunnel, bridge, viaduct or other structure located thereon.

Utah Code Ann. § 63–30–8 (1989). In 1991, the legislature amended section 63–30–8 to state:

> *Unless the injury arises out of one or more of the exceptions to waiver set forth in Section 63–30–10,* immunity from suit of all governmental entities is waived for any injury caused by a defective, unsafe, or dangerous condition of any highway, road,

street, alley, crosswalk, sidewalk, culvert, tunnel, bridge, viaduct, or other structure located on them.

Utah Code Ann. § 63–30–8 (1993) (emphasis added).

UDOT and the State argue that this amendment to section 63–30–8 is a clarification of the Governmental Immunity Act and should be applied retroactively. They support their position by noting that the legislative bill containing this amendment was entitled "An Act Relating to Governmental Immunity; Clarifying the Scope and Coverage of Governmental Immunity; and Making Technical Corrections." S.B. 218, 49th Leg., Gen.Sess., 1991 Utah Laws 230. However, that same bill contained a provision stating, "This act has prospective effect only and any changes to the law caused by this act do not apply to any claims based upon injuries or losses that occurred before the effective date of this act." *Id.* at 233. This provision clearly indicates that the legislature did not intend changes in the language of section 63–30–8 to be applied retroactively. Accordingly, defendants' argument that the 1991 amendment to section 63–30–8 should be applied retroactively fails.

*Application of Section 63–30–10 to Section 63–30–8 under Prior Law*

■ Alternatively, UDOT and the State assert that even under the prior law, section 63–30–10 applies to section 63–30–8. Keegan responds that section 63–30–10 does not apply to section 63–30–8 and, therefore, a cause of action brought under section 63–30–8 preempts consideration of the exceptions listed in section 63–30–10, including the discretionary function exception.

Utah Code Ann. § 63–30–8 (1989) states:

Immunity from suit of all governmental entities is waived for any injury caused by a defective, unsafe, or dangerous condition of any highway, road, street, alley, crosswalk, sidewalk, culvert, tunnel, bridge, viaduct or other structure located thereon.

Utah Code Ann. § 63–30–10(1) (1989) reads in pertinent part:

Immunity from suit of all governmental entities is waived for injury proximately caused by a negligent act or omission of an employee committed within the scope of employment except if the injury:

(a) arises out of the exercise or performance or the failure to exercise or perform a discretionary function, whether or not the discretion is abused[.]

This court first addressed the issue of whether the exceptions set forth in section 63–30–10 apply to waivers of immunity under section 63–30–8 in *Velasquez v. Union Pacific Railroad,* 24 Utah 2d 217, 469 P.2d 5 (1970). In that case, Velasquez brought a claim under section 63–30–8 against the Utah Public Service Commission [2] for injuries resulting from a railroad crossing that Velasquez alleged was defectively marked. This court held that even if the failure to have the most improved warning signs at a railroad crossing amounted to a defect in the highway under section 63–30–8, the discretionary function exception of section 63–30–10 nonetheless precluded Velasquez's action. *Id.* at 219, 469 P.2d at 6–7. This court then proceeded to apply section 63–30–10 and concluded that deciding what type of warning signal should be installed at a particular railroad crossing was a discretionary function vested in the Public Service Commission. *Id.*

This court's decisions subsequent to *Velasquez* have continued to apply section 63–30–10 analysis in cases brought under other sections of the Act. *See, e.g., Duncan v. Union Pac. R.R.,* 842 P.2d 832, 835 (Utah 1992) (applying discretionary function analysis under section 63–30–10 in case brought under section 63–30–8); *Bigelow v. Ingersoll,* 618 P.2d 50, 54 (Utah 1980) (discussing 63–30–10 analysis in case brought under section 63–30–8); *Andrus v. State,* 541 P.2d 1117, 1120 (Utah 1975) (employing section 63–30–10 analysis in case brought under section 63–30–9); *Carroll v. State,* 27 Utah 2d 384, 387–90, 496 P.2d 888, 890–92 (1972) (using section 63–30–10 analysis in case brought under section 63–30–8).

---

2. At the time of *Velasquez,* the Utah Public Service Commission had responsibility for marking railroad crossings. That authority is now vested in UDOT.

However, dicta in other cases subsequent to *Velasquez* have apparently caused " 'confusion concerning the interplay of specific waivers of immunity and the retained immunity in section 63–30–10.' " *Taylor v. Ogden City Sch. Dist.*, 881 P.2d 907, 912 n. 7 (Utah Ct.App.1994) (quoting *Smith v. Weber County Sch. Dist.*, 877 P.2d 1276, 1280 n. 5 (Utah Ct.App.1994)), *cert. granted*, November 22, 1994. Specifically, Keegan relies upon language from this court's decision in *Sanford v. University of Utah*, 26 Utah 2d 285, 488 P.2d 741 (Utah 1971), which stated, "Since the waiver of immunity in Secs. 8 and 9 encompasses a much broader field of tort liability than merely negligent conduct of employees within the scope of their employment, the legislature could not have intended that Sec. 10, including its exceptions, should modify Secs. 8 and 9." *Id.* at 292, 488 P.2d at 745. However, Keegan's reliance on this language is misplaced: first, because the cited language is merely dictum, and second, because *Sanford* is readily distinguishable from the present case. In the case at bar, Keegan brought an action based on negligence, squarely raising the issue of whether section 63–30–10 applies to section 63–30–8 in the negligence context, whereas *Sanford* involved the interrelation of those two sections in a cause of action sounding in nuisance. In *Sanford*, the plaintiff brought a nuisance action against the University of Utah, alleging that it was liable for damages caused by a construction project which redirected the flow of surface water in such a manner that Sanford's home was flooded during a rainstorm. The University argued that for immunity to be waived under section 63–30–8, Sanford had to first demonstrate negligence on the part of a University employee pursuant to the terms of section 63–30–10. Sanford responded that her nuisance claim was allowed by the waiver of immunity in sections 63–30–8 and –9 and that a showing of negligence was not required by these sections under the facts of her case. Thus, the issue in that case was not whether a claim under section 63–30–8 was subject to the exceptions to waiver contained in section 63–30–10, but rather whether a claim sounding in nuisance, without any showing of negligence, could be brought under the Governmental Immunity Act. This court held that in a nuisance action brought under sections 63–30–8 and –9, negligence need not be shown and no part of section 63–30–10 should be applied to that claim. As a result, the University's secondary defense, that it was immune because of the discretionary function exception, was not allowed because section 63–30–10 was not implicated in the action. This distinction between nuisance and negligence cases was affirmed by this court in *Rocky Mountain Thrift v. Salt Lake City*, 784 P.2d 459 (Utah 1989), which was substantially similar to *Sanford* but stated that decisions regarding the design, capacity, and construction of a city flood control system were subject to discretionary function immunity. *Id.* at 463. The key distinction between the two cases was that *Rocky Mountain Thrift* involved a cause of action sounding in *negligence* while *Sanford* involved a *nuisance* cause of action. Moreover, in *Bigelow v. Ingersoll*, this court recognized the unique nature of nuisance and specifically limited *Sanford* to its facts. *Bigelow*, 618 P.2d at 54 n. 3.

Keegan additionally erroneously relies on language from this court's decision in *Richards v. Leavitt*, 716 P.2d 276 (Utah 1985) (per curiam), which stated that the *Bigelow* court "supported the plaintiffs' posture that [section 63–30–10] did not modify the waiver of immunity governed by section 63–30–8." *Id.* at 278. This, however, misstates the holding in *Bigelow*. Although this court held therein that "the design of the traffic control system does not involve the 'basic policy making level,' " *Bigelow*, 618 P.2d at 53, and therefore does not involve a discretionary function, *id.*, the court nonetheless did apply section 63–30–10 to the facts of that case, which had been brought under section 63–30–8. *Id.* at 54. In any event, the *Richards* interpretation of *Bigelow* has subsequently been abandoned by this court. *See Duncan*, 842 P.2d at 835–36.

In the most recent decision dealing with this issue, *Duncan v. Union Pacific Railroad*, this court employed the analysis of *Velasquez*, expressly reaffirming its holding therein. *Id.* In *Duncan*, not only did this court apply discretionary function analysis under section 63–30–10 to a case brought

under section 63–30–8,[3] but it also specifically concluded that cases subsequent to *Velasquez,* including *Bigelow* and *Richards,* had not eroded its holding in *Velasquez. Id.* at 835.

In summary, we note that *Velasquez* was this court's earliest statement on the application of section 63–30–10 to section 63–30–8, and it has never been definitively overruled or limited. *Velasquez* is also the most recently reaffirmed approach by this court. *See id.* Furthermore, the *Velasquez* rule not only comports with our prior case law, but makes sound decisional sense as well. The Governmental Immunity Act is designed to provide various avenues for overriding governmental immunity and to provide standards for guidance in adjudicating the claims that are allowed when immunity is waived. In keeping with its purpose, the Act renders certain negligent actions which create unsafe highways subject to liability while granting certain others immunity. Thus, the Act— specifically section 63–30–10—requires us to examine whether the duty of care allegedly breached involves a level of discretionary decision making that the legislature has determined should not be subject to review by the court system but instead regulated by the political process. Accordingly, we conclude that the discretionary function exception set forth in section 63–30–10 does apply to cases brought under section 63–30–8, such as the one before us, and proceed to examine whether defendants' decision not to raise the concrete median barrier falls within the discretionary function exception.

### Discretionary Function Exception

■ UDOT and the State assert that the decision not to raise the concrete barrier during the surface overlay projects was a discretionary act shielded from liability under section 63–30–10. Keegan responds that UDOT's decision not to raise the concrete barrier was not a discretionary function.

Discretionary function immunity under section 63–30–10 is designed " 'to shield those governmental acts and decisions impacting on large numbers of people in a myriad of unforeseen ways from individual and class legal actions, the continual threat of which would make public administration all but impossible.' " *Hansen v. Salt Lake County,* 794 P.2d 838, 846 (Utah 1990) (quoting *Frank v. State,* 613 P.2d 517, 520 (Utah 1980)). In keeping with this purpose, this court has distinguished between discretionary and nondiscretionary decisions on the basis of whether the decision in question involves the formulation of policy or the execution of already-formulated policies. *Frank,* 613 P.2d at 519. This court has held that the discretionary function exception "should be confined to those decisions and acts occurring at the 'basic policy-making level,' and not extended to those acts and decisions taking place at the operational level . . . 'which concern routine, everyday matters, not requiring evaluation of broad policy factors.' " *Id.* at 520 (quoting *Carroll v. State,* 27 Utah 2d 384, 389, 496 P.2d 888, 891 (1972)). The reason for such a rule is plain, given the purpose of the discretionary function exception: "Where the responsibility for basic policy decisions has been committed to one of the branches of our tri-partite system of government, the courts have refrained from sitting in judgment of the propriety of those decisions." *Little v. Utah State Div. of Family Servs.,* 667 P.2d 49, 51 (Utah 1983).

Consistent with this approach, this court has ruled that decisions concerning placement of railroad warning signs, *Velasquez v. Union Pac. R.R.,* 24 Utah 2d 217, 219, 469 P.2d 5, 6 (1970), *Duncan v. Union Pac. R.R.,* 842 P.2d 832, 835 (Utah 1992), and the design of a city flood control system, *Rocky Mountain Thrift v. Salt Lake City,* 784 P.2d 459, 463 (Utah 1989), are discretionary functions. On the other hand, the decision of a road maintenance supervisor to mark off a closed road by constructing earthen berms rather than by putting up signs, *Carroll,* 27 Utah 2d at 389–90, 496 P.2d at 891–92, decisions concerning drainage at the site of a highway project, *Andrus v. State,* 541 P.2d 1117, 1120 (Utah 1975), and the placement of an improp-

---

**3.** We note that the *Duncan* court did not expressly state that the case had been brought under section 63–30–8. However, because *Duncan,* like *Velasquez,* involved an allegedly defectively marked railroad crossing, it is clear that *Duncan* was likewise brought under section 63–30–8.

erly synchronized traffic light, *Bigelow v. Ingersoll*, 618 P.2d 50, 53 (Utah 1980), are not discretionary functions and are therefore not entitled to immunity.

To regularize the outcome of inquiries into discretionary function, this court has adopted a four-part test to determine whether a given decision or act qualifies for a discretionary function exception:

"(1) Does the challenged act, omission, or decision necessarily involve a basic governmental policy, program, or objective?

(2) Is the questioned act, omission, or decision essential to the realization or accomplishment of that policy, program, or objective as opposed to one which would not change the course or direction of the policy, program, or objective? (3) Does the act, omission, or decision require the exercise of basic policy evaluation, judgment, and expertise on the part of the governmental agency involved? (4) Does the governmental agency involved possess the requisite constitutional, statutory, or lawful authority and duty to do or make the challenged act, omission, or decision?"

*Little*, 667 P.2d at 51 (quoting *Evangelical United Brethren Church of Adna v. State*, 67 Wash.2d 246, 407 P.2d 440, 445 (1965)).

Applying these factors in the case at bar, we conclude that UDOT's decision not to raise the concrete barrier during the surface overlay projects comes within the scope of this test. First, the decision involved a basic governmental objective: to wit, public safety on the roads. In fact, prior to the second resurfacing, UDOT's safety studies engineer, Art Guerts, carried out a comprehensive study of accident rates on the Parley's Canyon section of I–80 where the accident occurred and other comparable stretches of road and used his findings to create a safety study report. In that report, he concluded that not raising the barrier would not have an adverse effect on safety. Second, the decision was essential to the realization of that policy; it involved a determination of not only the degree of safety that would be provided by various options considered, but also what degree of safety would be an appropriate goal given time and cost constraints. Prior to submitting the second resurfacing project to the Federal Highway Administration (FHWA) for approval, which approval was granted, the project design engineer, Alex Badalian, prepared a cost-benefits report that was based on Guerts' safety study report. Badalian's cost-benefits report examined many factors including the cost of removing and replacing the barrier, the already-scheduled major resurfacing project for I–80 in five or six years, the added delays and inconvenience to users of the highway if the barrier were to be dug up and replaced, and the possibility that the job could not be completed inexpensively and with minimal disruption to traffic during the short construction season in the canyon. Third, the decision involved the basic policy judgment and expertise of the agency involved. As noted above, studies of the plan, its cost, and the degree of safety it would provide were carried out by senior engineers and circulated throughout and debated within the department. Fourth, the agency had the authority to make the decision; UDOT is provided with "general responsibility for statewide highway ... and transportation planning, research and design, construction, maintenance, security and safety." Utah Code Ann. § 63–49–4(1). In essence, UDOT's decision involved just the sort of policy-driven weighing of costs and benefits that the discretionary function exception was meant to protect.

Furthermore, this result coincides with the treatment of the discretionary function exception in other cases in this jurisdiction. As the court of appeals noted in *Duncan v. Union Pacific Railroad*, 790 P.2d 595 (Utah Ct.App.1990), *aff'd*, 842 P.2d 832 (Utah 1992):

Highway maintenance and improvement are predominately fiscal matters. Every highway could probably be made safer by further expenditures, but we will not hold UDOT (and implicitly, the legislature) negligent for having to strike a difficult balance between the need for greater safety and the burden of funding improvements.

*Id.* at 601 (footnote omitted). In accordance with this principle, we conclude that the decision made in this case is analogous to the decisions addressed in *Velasquez*, *Duncan*, and *Rocky Mountain Thrift*. The plaintiffs'

claims in *Velasquez* and *Duncan* concerned decisions not to upgrade allegedly defectively marked railroad crossing warning devices; *Rocky Mountain Thrift* involved questions surrounding the design of a city flood control system. Like the case at bar, all three cases addressed basic policy-based decisions. As stated by this court in *Duncan*, since the said decisions were " 'the result of serious and extensive policy evaluation, judgment, and expertise in numerous areas of concern,' " *Duncan*, 842 P.2d at 835 (quoting *Rocky Mountain Thrift*, 784 P.2d at 463), the duties imposed upon UDOT in relation to those decisions "are truly discretionary functions and are therefore protected by governmental immunity [under section 63–30–10]." *Id.*[4]

Our holding is also supported by cases from other jurisdictions. In a virtually identical federal case, *Baum v. United States*, 986 F.2d 716 (4th Cir.1993), the driver and passenger of a vehicle that penetrated a guardrail on a National Service parkway brought suit against the federal government, alleging that it was negligent in failing to properly construct and maintain the guardrail in question. In *Baum*, the court stated that to determine whether a certain decision involved the exercise of a discretionary function, courts must "look to the nature of the challenged decision in an objective, or general sense, and ask whether that decision is one which we would expect inherently to be grounded in considerations of policy." *Id.* at 721. The court went on to specifically hold that the decision regarding repair and re-placement of guardrails was subject to discretionary function immunity, stating:

> The decision of how and when to replace a major element of a substantial public facility is, like the decisions involving design and construction, at bottom a question of how best to allocate resources. Such a decision is inherently bound up in considerations of economic and political policy, and accordingly is precisely the type of governmental decision that Congress intended to insulate from judicial second guessing through tort actions for damages.

*Id.* at 724. Similarly, in the present case, the determination of whether to raise the concrete median barrier was a decision inherently bound up in economic, political, and safety considerations, as indicated by Guerts' safety study report and Badalian's cost-benefits report. Accordingly, it is likewise protected by discretionary function immunity.

Additionally, in *Patrazza v. Commonwealth*, 398 Mass. 464, 497 N.E.2d 271 (1986), the Supreme Judicial Court of Massachusetts held that the Commonwealth's adoption of a policy of leaving guardrail ends unburied was a discretionary decision exempt from liability under Massachusetts' tort claims act. The court stated, "Discretionary acts are those 'characterized by the high degree of discretion and judgment involved in weighing alternatives and making choices with respect to public policy and planning.' " *Id.* 497 N.E.2d at 273 (quoting *Whitney v. Worcester*, 373 Mass. 208, 366 N.E.2d 1210, 1210 (1977)). " 'Where there is room for policy judgment

---

4. Keegan argues that the decision made in this case is more akin to the decisions made in *Carroll, Andrus,* and *Bigelow*. We disagree. *Carroll* involved the actions of a road maintenance supervisor in marking off a closed road by constructing earthen berms rather than by putting up signs; *Andrus* involved the State's failure to maintain proper and adequate drainage at the site of a highway project. Neither action was based upon policy considerations or was designed to influence the final outcome of previous policy choices. Rather, both decisions involved practical operational choices of how specifically to carry out some previously made policy-based decision. Likewise, in *Bigelow*, which involved a faulty traffic control signal, once the policy decision to control the intersection with a traffic light had been made, seeing that the signal worked and continued to work properly was an operational function, a " ' "routine, everyday matter[ ],

not requiring evaluation of broad policy factors." ' " *Bigelow*, 618 P.2d at 53 (quoting *Frank*, 613 P.2d at 520 (quoting *Carroll*, 27 Utah 2d at 389, 496 P.2d at 891)).

Keegan additionally places special emphasis on this court's statement in *Bigelow* that "the design of the traffic control system does not involve the 'basic policy making level.' " *Id.* at 53. This reliance, however, is misplaced. As this court noted in *Duncan*:

> In *Bigelow v. Ingersoll*, two automobiles collided at a highway intersection due to an improperly synchronized traffic light which allowed the plaintiffs to make a left turn in front of an oncoming vehicle which also had a green light. Obviously, there was a malfunction which was completely unintended and unanticipated and did not result from the exercise of anyone's judgment.

*Duncan*, 842 P.2d at 835–36 (citation omitted).

and decision there is discretion.'" *Id.* 497 N.E.2d at 274 (quoting *United States v. Varig Airlines,* 467 U.S. 797, 811, 104 S.Ct. 2755, 2763, 81 L.Ed.2d 660 (1984)). The court went on to hold that the Commonwealth's decision, which involved weighing the costs and benefits of various approaches, was such a discretionary act. *Id.* Similarly, because UDOT's decision not to raise the concrete median barrier involved a high degree of policy judgment in weighing alternatives, it was likewise a discretionary act. *See also Epstein v. State,* 124 A.D.2d 544, 507 N.Y.S.2d 689, 693 (1986) (holding that design, construction, and maintenance of highways are entrusted to the State's sound discretion as long as the highway is constructed so as not to create an affirmative hazard), *appeal denied,* 69 N.Y.2d 605, 513 N.Y.S.2d 1026, 505 N.E.2d 954 (1987); *City of El Paso v. Ayoub,* 787 S.W.2d 553, 554 (Tex.Ct.App. 1990) (holding that "design, placement and upgrading of guardrails and barricades is the exercise of a discretionary power which ... is immune from liability"); *Burnett v. Texas Highway Dep't,* 694 S.W.2d 210, 212 (Tex.Ct. App.1985) (holding that decision to change median barrier is discretionary matter exempted from liability).

UDOT's decision not to raise the concrete barrier during the surface overlay projects was not an operational decision involving the negligent installation or maintenance of a traffic device, but rather involved a policy-based plan, approved by the FHWA, which resulted from a considered weighing of the costs and benefits of certain safety and construction policies and which involved the exercise of UDOT's judgment and discretion. Accordingly, we hold that the decision not to raise the concrete barrier was a discretionary act shielded from liability under section 63–30–10.

## CONCLUSION

Based on the foregoing, the decision of the trial court denying summary judgment is reversed, and the cause is remanded for further proceedings consistent with this opinion.

ZIMMERMAN, C.J., STEWART, Associate C.J., and HOWE and DURHAM, JJ., concur.